94 F.3d 755
 29 Bankr.Ct.Dec. 815
 In re BURGER BOYS, INC., Debtor.
SOUTH STREET SEAPORT LIMITED PARTNERSHIP, Creditor-Appellant,
v.
BURGER BOYS, INC., doing business as Burger Boys of
Brooklyn, Debtor-Appellee.
 No. 1240, Docket 95-5077.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 16, 1996.
Decided Aug. 28, 1996.
 
 Clifford M. Solomon, New York City (Eric D. Cherches, Corwin, Solomon & Tanenbaum, New York City, on the brief), for Creditor-Appellant.
 Lance H. Klein, White Plains, NY (Edward F. Beane, Nicholas M. Ward-Willis, Keane & Beane, White Plains, NY, on the brief), for Debtor-Appellee.
 Before: KEARSE, WALKER, and HEANEY,[1] Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Creditor South Street Seaport Limited Partnership ("South Street") appeals from an order of the United States District Court for the Southern District of New York (Charles L. Brieant, District Judge ) that affirmed in part and reversed in part two orders of the United States Bankruptcy Court for the Southern District of New York (John J. Connelly, Bankruptcy Judge[2]). In this appeal, South Street raises four arguments: (1) the district court erred in finding that the third motion of the debtor, Burger Boys, Inc., for an extension of time to assume or reject a lease (the "third extension motion") was filed timely; (2) the district court erred in vacating the bankruptcy court's order denying the third extension motion because Burger Boys was not current in its post-petition rent payments; (3) the district court abused its discretion in withdrawing the reference to the bankruptcy court; and (4) the district court erred in allowing Burger Boys to assume the lease without providing adequate assurance as to its pre-petition and post-petition lease payment obligations. Burger Boys argues that we should dismiss this appeal on the ground that it is moot.
 
 
 2
 We affirm in part, and vacate and remand in part.
 
 BACKGROUND
 
 3
 In May 1983, South Street and Burger Boys entered into a lease for space located in the Market Building of the South Street Seaport complex in lower Manhattan. The parties amended the lease in February 1985, December 1988, and August 1991. Throughout the early 1990s, retail businesses gradually moved out of the Market Building. Burger Boys continued operating during this period, but was unable to keep current in its rental payment obligations. In October 1993, South Street commenced a summary proceeding (the "Summary Proceeding") in the Civil Court of the City of New York, alleging that Burger Boys owed rent from at least August 1993. In December 1993, on the eve of the trial of the Summary Proceeding, Burger Boys filed for bankruptcy protection under Chapter 11. Section 365(d)(4) of the Bankruptcy Code, 11 U.S.C. § 365(d)(4), provides that a debtor in a Chapter 11 case has sixty days in which to assume any unexpired lease of nonresidential real property; if the lease has not been assumed within sixty days, it will be deemed to be rejected.[3] In January 1994, Burger Boys, alleging that it was unsure about South Street's plans for the Market Building and therefore the future viability of Burger Boys' lease, filed its first motion for an extension of time to assume or reject the lease. The bankruptcy court granted the motion over South Street's objection.
 
 
 4
 In April 1994, Burger Boys made a second motion for an extension of time. On May 2, 1994, Burger Boys filed an adversary proceeding (the "Adversary Proceeding") in the bankruptcy court against South Street, asserting essentially the same claims that it had brought as counterclaims against South Street in the Summary Proceeding. On June 21, South Street moved for the bankruptcy court to abstain from hearing the Adversary Proceeding. At a hearing that same day, the bankruptcy court found that the Adversary Proceeding was a non-core proceeding and therefore, on the condition that South Street refile the Summary Proceeding in the New York Supreme Court, dismissed the Adversary Proceeding and lifted the automatic bankruptcy stay as to the Summary Proceeding. In addition, the bankruptcy court granted the extension motion and gave Burger Boys sixty days to assume or reject the lease. On July 1, 1994, Burger Boys filed a timely notice of appeal to the district court and on August 15, 1994, the bankruptcy court stayed its prior order pending the entry of a final order by the district court.
 
 
 5
 In a memorandum decision filed December 15, 1994, the district court (Barrington D. Parker, Jr., District Judge ) affirmed the bankruptcy court's earlier order. In re Burger Boys, Inc., 183 B.R. 682 (S.D.N.Y.1994). The district court concluded that Burger Boys' Adversary Proceeding was not a core proceeding under the Bankruptcy Code and that the bankruptcy court did not abuse its discretion in lifting the automatic stay. On December 19, 1994, the district court entered judgment on the appeal.
 
 
 6
 On February 16, 1995, Burger Boys filed the third extension motion. South Street again opposed the motion, arguing, among other things, that Burger Boys had been given sufficient time in which to decide whether to assume the lease and that the third extension motion was filed after the allowable period. On June 7, 1995, the bankruptcy court issued an order, holding that the third extension motion was filed timely but requiring that Burger Boys become current on its post-petition rental payments to South Street by June 15, 1995; failure to do so would bar any hearing on the third extension motion. The bankruptcy court further held that "in the event [Burger Boys] fails to comply with [these] requirements ... counsel for South Street may settle an Order denying [Burger Boys'] motion and deeming the lease rejected." On June 14, the bankruptcy court extended the time for Burger Boys to become current until June 21. Nonetheless, Burger Boys failed to do so. Accordingly, in an order entered June 22, the bankruptcy court deemed the lease rejected, found the third extension motion to be moot, and authorized South Street to pursue appropriate remedies under state law.
 
 
 7
 On June 15, however, Burger Boys had appealed the June 7 order to the district court (Brieant, J.). At a hearing on September 7, 1995, the district court found that the bankruptcy court had erred in requiring Burger Boys to accept or reject the lease by June 21. The district court further found that "because of the staleness of the entire proceeding a remand on this appeal would serve no useful purpose except to create further delay and additional over-lawyering." Therefore, the district court gave Burger Boys an additional fifteen days in which to accept or reject the lease, and, if it accepted the lease, an additional fifteen days thereafter to deposit with the court adequate security for the entire post-petition rental payments owed to South Street. Burger Boys timely elected to assume the lease and paid the required funds into the district court.
 
 
 8
 South Street now appeals the district court's order. South Street argues that the bankruptcy court did not err in requiring the payment of all post-petition obligations prior to holding a hearing on the third extension motion, and that, in any event, the district court lacked the authority to allow Burger Boys to assume the lease. In addition, South Street repeats its argument that the third extension motion was untimely. Burger Boys contends that the district court did not err in any respect and that, in any event, this appeal has been mooted by Burger Boys' assumption of the lease.
 
 
 9
 We find that this appeal is not moot and that the third extension motion was timely. We affirm the district court's conclusion that the bankruptcy court abused its discretion when it conditioned the third extension motion solely on the payment of the post-petition obligations to South Street. We also find that the district court did not err in withdrawing the mandate from the bankruptcy court, but vacate the district court's decision to allow Burger Boys to assume the lease and remand that issue for reconsideration.
 
 DISCUSSION
 
 10
 "Our review of the orders of district courts in their capacity as appellate courts in bankruptcy cases is plenary." In re Best Prods. Co., 68 F.3d 26, 29 (2d Cir.1995). Therefore, we review the district court's determinations of law de novo and its determinations of fact for clear error only. Id.
 
 I. Mootness
 
 11
 As a preliminary matter, Burger Boys contends that we do not have jurisdiction to decide this appeal because it has been mooted by Burger Boys' subsequent assumption of the lease. Under Article III of the Constitution, our jurisdiction is limited to live cases and controversies. Freedom Party v. New York State Bd. of Elections, 77 F.3d 660, 662 (2d Cir.1996) (per curiam) (citing Jefferson v. Abrams, 747 F.2d 94, 96 (2d Cir.1984)). Therefore, under the mootness doctrine, we do not have jurisdiction over a case " 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " Id. (quoting New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992) (internal quotations omitted)). In addition, a bankruptcy appeal is rendered moot under the equitable considerations of bankruptcy "when 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.' " In re Best Prods., 68 F.3d at 30 (quoting In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir.1993)).
 
 
 12
 South Street plainly has a legally cognizable interest in the outcome of this case. Although the district court allowed Burger Boys to assume the lease, that decision is capable of reversal by an order of this court deeming the lease rejected. Such relief would be effective--it would place South Street in nearly the same position it would have been in had Burger Boys not been allowed to assume the lease--and would also be equitable. Indeed, Burger Boys has neither made any showing that we or the lower courts lack the power to order such relief nor demonstrated that any third party has relied irreversibly on the assumption of the lease. Cf. In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294, 1296 (11th Cir.1984) (holding that appeal of bankruptcy court's order lifting automatic stay and allowing sale of property was moot because circuit court was powerless to grant relief). Therefore, we find that this appeal is not moot.
 
 II. Timeliness of the Third Extension Motion
 
 13
 On August 15, 1994, the bankruptcy court ordered that the automatic bankruptcy stay be lifted if Burger Boys failed to assume the lease within sixty days of that order, i.e., by October 14, 1994. However, the bankruptcy court also stated that "[t]his Order is hereby stayed pending the entry of a final order determining the Debtor/Plaintiff's appeal to the District Court." On December 15, 1994, the district court affirmed the bankruptcy court's prior order and, on December 19, entered judgment in favor of South Street. On February 16, 1995, sixty-three days after the district court's order was issued and fifty-nine days after the judgment was entered, Burger Boys filed the third motion for an extension. South Street now contends that the time for filing the third extension motion ran from the date the order was issued, not when judgment was entered, and therefore the motion was untimely.
 
 
 14
 The bankruptcy court's use of the phrase "final order" here is ambiguous. On the one hand, the use of "order" could indicate, as South Street urges us, that the bankruptcy court meant to refer to the order that would decide Burger Boys' appeal. On the other hand, the use of "final" could mean, as Burger Boys argues, that the bankruptcy court meant to refer to that act which brings the appeal to an end, here the entry of judgment.
 
 
 15
 "Finality is determined on the basis of pragmatic, not needlessly rigid pro forma, analysis." Fiataruolo v. United States, 8 F.3d 930, 937 (2d Cir.1993). The Bankruptcy Rules generally provide that the time to complete actions subsequent to an appeal to the district court run from the time of the entry of the judgment and the issuance of the order. For instance, Bankr.R. 8016(b) states that it is the judgment that triggers the duty of the district court clerk to contact the bankruptcy court clerk. Similarly, Bankr.R. 8015 provides that a party has ten days from the entry of the judgment to file a motion for rehearing and Bankr.R. 8017(a) states that "[j]udgments of the district court ... are stayed until the expiration of 10 days after entry." Because the bankruptcy court's use of the term "final order" is ambiguous and because the general rule is that the time to perform an act after a bankruptcy appeal in the district court runs from the entry of judgment, we find that "final order" refers to the entry of judgment and that the third extension motion was timely filed.
 
 
 16
 III. The Bankruptcy Court's Decision on the Third Extension Motion
 
 
 17
 In its June 7, 1995 order relating to Burger Boys' third extension motion, the bankruptcy court conditioned any hearing on Burger Boys "becoming current on all its post-petition obligations to South Street." If Burger Boys failed to do so, no hearing on the motion would be held and the motion would be denied. Burger Boys contends that the bankruptcy court erred. The district court agreed with Burger Boys that "the Bankruptcy Court's decision was clearly erroneous so far as it deems the Debtor's lease rejected."
 
 
 18
 The decision to grant or deny a motion for an extension of time is generally within the discretion of the appropriate court, and we see no reason to deviate from that rule here. Cf. Association for Retarded Citizens v. Thorne, 68 F.3d 547, 554 (2d Cir.1995) (motion to enlarge time to move for reconsideration); Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir.1988) (motion to extend time for filing an objection to a magistrate's report). Nonetheless, even under this standard, if the bankruptcy court applied the wrong legal standard, we must reverse its ruling. See Pashaian v. Eccelston Properties, Ltd., 88 F.3d 77, 85 (2d Cir.1996). Because we conclude that the bankruptcy court improperly considered only one factor in deciding the third extension motion, we agree with the district court that the bankruptcy court erred.
 
 
 19
 In Theatre Holding Corp. v. Mauro, 681 F.2d 102 (2d Cir.1982) (per curiam), we faced the question of what constituted a reasonable time for a debtor-in-possession to assume a lease under the Bankruptcy Code. Although we found that the matter was within the discretion of the bankruptcy court, we held that there were a number of considerations that the court should weigh, including (1) whether the debtor was "paying for the use of the property"; (2) whether "the debtor's continued occupation ... could damage the lessor[ ] beyond the compensation available under the Bankruptcy Code"; (3) whether the lease is the debtor's primary asset; and (4) whether the debtor has had sufficient time to formulate a plan of reorganization. Id. at 105-06. Since our decision in Theatre Holding, Congress has amended § 365 of the Bankruptcy Code, which now requires assumption or rejection within sixty days. Nonetheless, we agree with the bankruptcy court's view in In re Wedtech Corp., 72 B.R. 464, 471 (Bankr.S.D.N.Y.1987), that the factors we discussed in Theatre Holding are still relevant to a bankruptcy court's decision on a debtor's motion for extension of time to assume or reject a lease. This list of factors is by no means exhaustive and, in appropriate cases, there may be other factors that a bankruptcy court should consider, such as the complexity of the case facing the debtor, the number of leases that the debtor must evaluate, and "the need for judicial determination of whether a lease exists." Wedtech, 72 B.R. at 472; see also 2 Lawrence P. King, Collier on Bankruptcy p 365.03, at 365-38 (15th ed.1995) (stating that the factors to be considered under § 365(d)(4) include whether the lease is the primary asset, whether the landlord would receive a windfall, whether rent has been or is being paid, the complexity of the case, and the amount of time the trustee has had to analyze the estate).
 
 
 20
 In this case, several of the factors arguably weighed in favor of finding that the motion should be granted. First, Burger Boys' lease with South Street is its most important asset. Second, the state court's determination of the Summary Proceeding will determine whether there is, in fact, any lease for Burger Boys to assume. Finally, South Street does not contend that it has suffered any harm other than lost rents from Burger Boys' continued occupation of its space.
 
 
 21
 The bankruptcy court's ruling, however, considered only one of the relevant factors: Burger Boys' failure to become current on its post-petition lease obligations. Distilled to its essence, the bankruptcy court's ruling was that unless Burger Boys was current in its post-petition rent payment, the court would not grant the third extension motion. We disagree with this ruling. Although § 365(b)(1) may require that a debtor, before it assumes a lease, become current on or provide adequate assurance of its payment of past-due lease obligations (an issue we address below), we see nothing in § 365(d)(4) that requires a debtor to be current before the bankruptcy court grants a motion for an extension of time. Of course, as we noted in Theatre Holding, the debtor's current payment status remains a relevant consideration for the bankruptcy court. It is not, however, the only consideration, and we agree that the bankruptcy court abused its discretion by considering only this factor in deciding whether or not to grant the third extension motion.
 
 
 22
 IV. Withdrawal of the Reference to the Bankruptcy Court
 
 
 23
 After the district court found that the bankruptcy court had erred in denying the third extension motion, it ruled on the merits of the motion, stating that Burger Boys would have an additional fifteen days to make an election to assume or reject the lease. The district court further stated that it did "not believe it's necessary to withdraw the reference in order to make these modifications but [if] it be adjudged that is so, then the reference is withdrawn only to the extent of making the order hereby to be entered."
 
 
 24
 We agree with South Street that, before deciding the merits of the third extension motion, the district court was required to withdraw its reference from the bankruptcy court. The district court's initial jurisdiction over this matter stems from 28 U.S.C. § 158(a), which grants to district courts jurisdiction over appeals from final judgments, orders, and decrees of bankruptcy courts. Acting in this appellate role, the district court only had the power to review the bankruptcy court's determination of the third extension motion, either affirming, modifying, or reversing the bankruptcy court's order. See Bankr.R. 8013; In re Bodine, 190 B.R. 759, 762 (S.D.N.Y.1995). As we noted above, the determination of whether cause existed for an extension of time required not just resolution of questions of law, but findings on factual issues that are disputed by the parties, such as whether Burger Boys already had been given sufficient time to make a decision. The district court, acting in its appellate capacity, could not make these decisions, and therefore it would have been error for it to decide the third extension motion de novo in its appellate capacity. See In re Cohn, 54 F.3d 1108, 1113 (3d Cir.1995) (error for a district court acting in its appellate capacity to make its own factual findings); In re Batie, 995 F.2d 85, 88 (6th Cir.1993) (district court bound by bankruptcy court's factual findings unless they are clearly erroneous).
 
 
 25
 The district court could obtain jurisdiction over the merits of the third extension motion by withdrawing the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d). Withdrawal under § 157(d) requires a showing of cause, a term which § 157(d) does not define. See In re Pruitt, 910 F.2d 1160, 1168 (3d Cir.1990). We have previously held, however, that in deciding whether to withdraw an issue from the bankruptcy court, the district court should weigh several factors, of which the first is the most important: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993), cert. dismissed, --- U.S. ----, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); see also Pruitt, 910 F.2d at 1168 (citing Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir.1985)).
 
 
 26
 The district court, in stating its reasons for deciding the third extension motion rather than remanding it to the bankruptcy court, did not expressly recite all of the Orion factors. However, the district court's failure to do so is not fatal to the district court's decision. See, e.g., Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1032 (2d Cir.1993) (holding that remand not required even where district court did not recite all factors as to whether reliance by investors on a representation was justified). In this case, there was no dispute concerning the first factor because the decision to grant or deny the motion for an extension of time is plainly a core bankruptcy matter, see Orion, 4 F.3d at 1102, and the district court explicitly discussed the second and third factors--the efficient use of judicial resources and the delay and costs to the parties. Furthermore, because the district court withdrew the reference sua sponte, there was no concern that either party was engaged in forum shopping. Finally, under the circumstances of this litigation, the district court's limited withdrawal of the reference as to this single issue posed no threat to the uniformity of the administration of this estate. Although it would have been preferable for the district court to have discussed the Orion factors in greater detail, on this record we find no error in the decision to withdraw the reference from the bankruptcy court.
 
 
 27
 V. The District Court's Decision on the Third Extension Motion
 
 
 28
 After withdrawing the reference from the bankruptcy court, the district court proceeded to decide the merits of the third extension motion and gave Burger Boys an additional fifteen days in which to accept or reject the lease. In addition, the district court ordered that if Burger Boys decided to accept the lease, it would have an additional fifteen days thereafter to deposit with the court adequate security for the entire post-petition rent owed to South Street. Although we affirm the district court's decision to grant the third extension motion, we vacate the district court's decision to allow Burger Boys to assume the lease.
 
 
 29
 As we explained above, in deciding a motion for extension of time to assume or reject a lease, a bankruptcy or district court (when acting under its original jurisdiction) should weigh the factors we discussed in Theatre Holding before deciding whether to exercise its discretion in granting or denying the motion. Our review of the record of the hearing before the district court as well as the parties' submissions leaves us with no doubt that the lower court properly considered those factors. Indeed, the district court considered the need for payment of rent to South Street, but found that the time period allowed by the bankruptcy court was inequitable because there was a likelihood that Burger Boys would not owe any rent. Accordingly, we find no abuse of discretion in the granting of the third extension motion.
 
 
 30
 We vacate the district court's order, however, to the extent that it allowed Burger Boys to assume the lease without making a formal motion. Section 365(d)(4) provides only that a lease must be assumed or rejected within the applicable time period, but does not indicate how such assumption should occur. Section 365(a), however, states that the trustee may assume a lease only "subject to the court's approval," and Bankr.R. 6006 provides that "[a] proceeding to assume ... an ... unexpired lease ... is governed by [Bankr.R.] 9014," which in turn requires that "[i]n a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." We agree with the majority of other courts that have considered this issue and conclude that the assumption of a lease must be done, as suggested by the Bankruptcy Rules, through a formal motion to the court. See In re Lew Mark Cleaners Corp., 86 B.R. 331, 333 (Bankr.E.D.N.Y.1988) (collecting cases). By allowing Burger Boys to assume or reject the lease by filing an election and without providing an opportunity for South Street to oppose a motion to assume, the district court erred.
 
 
 31
 Burger Boys contends that South Street waived its right to be heard on the assumption by not asking for the right at the hearing before the district court and by not seeking a stay of the district court's order. This argument is specious. At the hearing, the district court made it clear that it had reached a final decision and even went so far as to say that "the Court enjoins any interference with the subject matter of [the lease] by anybody having notice and no additional order to that effect is necessary." Afterwards, South Street timely prosecuted this appeal. Even if a party can waive its right to a formal motion for approval of the assumption of a lease, see In re J. Woodson Hays, Inc., 69 B.R. 303, 309 (Bankr.M.D.Fla.1987), we do not see how such a waiver occurred here, see In re THW Enters., 89 B.R. 351, 355-56 (Bankr.S.D.N.Y.1988) (noting that waiver requires the intention to relinquish a right).
 
 
 32
 Finally, we note that the orders of the bankruptcy and district courts referenced only post-petition rent payments. From the record, it appears that Burger Boys is in arrears as to pre-petition rent payments as well. It is our understanding that before Burger Boys can be allowed to assume the lease, it must "cure[ ], or provide adequate assurance that [it] will promptly cure" its failure to make both pre-petition and post-petition lease payments. 11 U.S.C. § 365(b)(1)(A); see also In re Superior Toy & Mfg. Co., 78 F.3d 1169, 1174 (7th Cir.1996) (holding that § 365(b) requires payment of all pre-petition and post-petition amounts due under an executory contract before assumption); 2 King, supra, p 365.04, at 365-48 (assuming that defaults under § 365(b) include both pre-petition and post-petition defaults). We therefore remand to the district court to decide what § 365(b)(1)(A) will require under the facts of this case.
 
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm in part and vacate in part the order of the district court, and we remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Honorable Gerald W. Heaney, United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [2]
 Honorable John J. Connelly, United States Bankruptcy Judge for the District of Minnesota, sitting by designation
 
 
 [3]
 Section 365(d)(4) actually refers to the trustee, but because this is a case under Chapter 11, Burger Boys, as the debtor-in-possession, may exercise all the rights, powers, functions and duties (with a few exceptions that are inapplicable here) of a trustee. See 11 U.S.C. § 1107(a); In re Century Brass Prods., Inc., 22 F.3d 37, 39-40 (2d Cir.1994)