**Nickolas ABONDOLO, et al., and their successors as Trustees of the Amalgamated Meat Cutter and Retail Food Store Employees Union Local 342 Pension Fund, et al., Plaintiffs,**

v.

**GGR HOLBROOK MEDFORD, INC. a/k/a Meat Farms, Inc., et al., Defendants.**

**No. 91–CV–4740(TCP)(VVP).**

United States District Court, E.D. New York.

Aug. 15, 2002.

**104**

Judith P. Broach, Broach & Stulberg, New York City, for plaintiffs.

A. Sott Mandelup, Pryor & Mandelup, L.L.P., Harold Joseph Levy, Thaler & Gertler, L.L.P., Westbury, NY, John M. Brickman, Ackerman, Levine & Cullen, L.L.P., Great Neck, NY, for petitioner.

Peter Sullivan, Robert E. Goldman, Speno, Goldman, Goldberg, Steingart & Penn, P.C., Garden City, NY, Lawrence May, Angel & Frankel, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The United States moves pursuant to Title 26 U.S.C. § 7424 and Rule 24 of the Federal Rules of Civil Procedure to intervene in an action currently pending before this Court under docket number 91–CV–4740. The United States also moves to withdraw to this Court four motions pending before the United States Bankruptcy Court for the Eastern District of New York in a related bankruptcy action filed under docket number 800–83212–288. The bankruptcy trustee for the bankruptcy estate of George A. Gamaldi, Sr. joins in both of the United States' motions.

For the reasons stated below: (1) the United States' Motion to Intervene is GRANTED; and (2) the United States' Motion to Withdraw the Reference is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This case arises primarily under the Employee Retirement Income Security Act of 1974 ("ERISA"). It suffers from a long and tortured procedural history.

## A. The Events Leading to These Motions

In July of 1990, Albert V. Faraldi ("Faraldi") and entities he owned, including Faraldi Food Industries, Limited ("Faraldi Foods"), entered into an asset purchase agreement with George A. Gamaldi, Sr. ("Gamaldi"). *In re Albert V. Faraldi,* No. 800–83212–288, slip op. at 2, 2002 WL 1058058 (Bankr.E.D.N.Y. Feb. 1, 2002). Pursuant to that asset purchase agreement, Faraldi and Faraldi Foods agreed to purchase a chain of food stores owned by Gamaldi ("Gamaldi Foods"). *Id.*

In connection with that asset purchase agreement, Faraldi Foods executed promissory notes in both Gamaldi's and Gamaldi Foods' favor. *Id.* Faraldi personally guaranteed those notes. *Id.*

Faraldi Foods defaulted on those promissory notes shortly after executing them. *Id.* On May 6, 1991, Gamaldi sent Faraldi a letter demanding payment under the guaranty that Faraldi had personally executed. *Id.* Faraldi did not honor that demand. *Id.*

Two months later, Faraldi began transferring some of his personal property to his wife. Specifically, Faraldi transferred to his life: (1) his interest in a house in Huntington, New York; (2) an oceanfront condominium in Montauk, New York; (3) a forty-four foot yacht; and (4) approximately $700,000.00 in liquid assets.[1] *Id.*

In December of 1991, the trustees of a union pension fund commenced this ERISA action against Gamaldi Foods under docket number 91–CV–4740. *Id.* On May 11, 1992, Gamaldi filed a Third-party Complaint against Faraldi and Faraldi Foods in this ERISA action. *Id.* That Third-party Complaint sought indemnification and damages for the breached asset purchase agreement and the defaulted guaranty ("Third-party Action"). *Id.* Faraldi subsequently defaulted in that Third-party Action. *Id.*

On June 28, 1993, the Internal Revenue Service ("IRS") assessed Faraldi with a trust fund recovery penalty for failure to remit withheld employee payroll taxes. (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.) On October 20, 1993, the IRS docketed a federal tax lien of $1,800,000.00 against Faraldi and his property with the Suffolk County Clerk. *In re Albert V. Faraldi,* No. 800–83212–288, slip op. at 2 (Bankr. E.D.N.Y. Feb. 1, 2002); (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.)

On July 6, 1994, Gamaldi filed for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code. *Id.* A trustee was appointed for Gamaldi's bankruptcy estate ("Gamaldi Trustee"). *Id.* at 3. The Gamaldi Trustee was subsequently substituted as plaintiff in the Third-party Action against Faraldi and Faraldi Foods for breach of the asset purchase agreement and the guaranty. *Id.* at 3.

On June 26, 1996, the Gamaldi Trustee obtained a default judgment of $9,117,795.10 against Faraldi and Faraldi Foods in the Third-party Action. *Id.* On July 24, 1997, that default judgment was rescinded and was replaced with one in the same amount that named only Faraldi. *Id.* That second default judgment named only Faraldi because Faraldi Foods had itself filed for bankruptcy relief in the interim. *Id.* The Gamaldi Trustee eventually filed that second default judgment against Faraldi with the Suffolk County Clerk. *Id.*

---

1. Both Huntington, New York and Montauk, New York are located in Suffolk County, New York.

On November 9, 1998, the Gamaldi Trustee commenced a special proceeding against Faraldi and his wife in this Court: (1) to enforce the default judgment entered against Faraldi; and (2) to void the conveyances made by Faraldi to his wife in July of 1991 ("Fraudulent Conveyance Action"). *Id.* Faraldi subsequently moved unsuccessfully for summary judgment of that Fraudulent Conveyance Action. *Id.*

On January 18, 2000, this Court denied Faraldi's motion to vacate the default judgment that had been entered against him on July 24, 1997 in the Third-party Action. *Id.* Faraldi subsequently appealed that ruling to the United States Court of Appeals for the Second Circuit. *Id.* That court denied Faraldi's appeal on April 10, 2000. *Id.*

This Court consequently scheduled jury selection in the Fraudulent Conveyance Action for May 15, 2000. (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.) Jury selection in that action never occurred however, because on May 12, 2000, Faraldi individually filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code and thereby received an automatic stay under Title 11 U.S.C. § 362. (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.) Allen B. Mendelsohn ("Faraldi Trustee") was appointed trustee for Faraldi's bankruptcy estate. *In re Albert V. Faraldi,* No. 800–83212–288, slip op. at 3 (Bankr.E.D.N.Y. Feb. 1, 2002).

At some point, the Faraldi Trustee moved to modify the automatic stay in place in Faraldi's bankruptcy action to allow the Fraudulent Conveyance Action to proceed in this Court. On May 17, 2000, the bankruptcy court modified the stay in Faraldi's bankruptcy action to permit the Fraudulent Conveyance Action to proceed. (United States' Mem. in Supp.Mot. to

Withdraw Referral and Consolidate at 2.) On March 12, 2001, the bankruptcy court granted Faraldi a discharge in his bankruptcy proceeding. (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.)

On June 3, 2000, this Court "So Ordered" a stipulation between the Faraldi Trustee and the Gamaldi Trustee wherein the Gamaldi Trustee acknowledged that his fraudulent conveyance claims against the Faraldis belonged to the Faraldi Trustee. (Faraldi Mem. in Opp.Mot. to Intervene at 4.) Nevertheless, in August of 2001, the Gamaldi Trustee moved the bankruptcy court to compel the Faraldi Trustee to abandon his position as petitioner in the Fraudulent Conveyance Action currently pending in this Court. (Faraldi Mem. in Opp.Mot. to Intervene at 4.) Around that same time, the IRS also intervened in Faraldi's bankruptcy action in support of the Gamaldi Trustee's motion to compel the Faraldi Trustee to abandon his position as petitioner in the Fraudulent Conveyance Action. (Faraldi Mem. in Opp.Mot. to Intervene at 4.)

On February 1, 2002, United States Bankruptcy Judge Stan Bernstein ruled partially in the Gamaldi Trustee's favor on his motion to compel the Faraldi Trustee to abandon certain fraudulent conveyance claims. ("February 1st Order"). *In re Albert V. Faraldi,* No. 800–83212–288, slip op. at 1 (Bankr.E.D.N.Y. Feb. 1, 2002). Specifically, Bankruptcy Judge Bernstein ordered the Faraldi Trustee to abandon to the Gamaldi Trustee the fraudulent conveyance claims pending in this Court that concern the Huntington home and the Montauk condominium. *Id.* However, Bankruptcy Judge Bernstein did not rule on the fraudulent conveyance claims that concern the forty-four foot yacht or the $700,000.00 in liquid assets. *See id.* Ac-

cordingly, those fraudulent conveyance claims still belong to the Faraldi Trustee.

## B. The Current Motions Before this Court

There are currently two motions before this Court. The first is a motion ("First Motion") by the United States that is joined by the Gamaldi Trustee. By that first motion, the United States seeks to intervene in the Third-party Action pending before this Court to assert federal tax liens against Faraldi and his wife. The First Motion also seeks to set aside the 1991 conveyances made by Faraldi to his wife on grounds that those conveyances were fraudulent as to Faraldi's creditors (including the United States). Additionally, the United States seeks to file a "United States Complaint in Intervention" in the Third-party Action.

The second motion is also made by the United States and is also joined by the Gamaldi Trustee ("Second Motion"). The Second Motion seeks: (1) to withdraw to this Court four motions currently pending before the bankruptcy court in Faraldi's bankruptcy action; and (2) to consolidate those motions with the Third-party Action currently pending in this Court. Specifically, the United States seeks to have the following motions removed from the bankruptcy court to this Court: (1) the Gamaldi Trustee's application to compel the Faraldi Trustee to abandon his remaining fraudulent conveyance claims to the Gamaldi Trustee; (2) the United States' motion to compel the Faraldi Trustee to abandon those fraudulent conveyance claims; (3) the Faraldi Trustee's motion to reclassify the IRS, New York State and the Gamaldi Trustee as unsecured creditors; and (4) the Faraldi Trustee's motion to approve a settlement with Faraldi's wife. (United States Mem. in Supp.Mot. to Withdraw the Reference at 4, 6–7.)

The United States filed its Second Motion before Bankruptcy Judge Bernstein issued the February 1st Order that compelled the Faraldi Trustee to abandon some of the fraudulent conveyance claims pending in this Court to the Gamaldi Trustee. (Mem. in Joinder and Supp. by the Gamaldi Trustee of United States' Mots. at 2.) Nevertheless, the Second Motion remains viable because Bankruptcy Judge Bernstein's February 1st Order did not compel the Faraldi Trustee to abandon to the Gamaldi Trustee the fraudulent conveyance claims that concern the forty-four foot yacht or the $700,000.00 in liquid assets.

## DISCUSSION

### A. The United States' Right to Intervene in the Third-party Action

#### 1. Title 26 U.S.C. § 7424

■ The United States first argues that it may intervene by right in the Third-party Action pursuant to 26 U.S.C. § 7424 because it has filed a valid tax lien against some of the assets that are at issue in that action. The Faraldi Trustee argues that § 7424 does not permit the United States to intervene in the Third-party Action. The United States posits the more persuasive argument.

■ The United States may intervene in any action concerning property against which it claims a tax lien. 26 U.S.C. § 7424 (2000); *Gen. Ins. Co. of Am. v. Tilcon N.Y.*, No. 96 Civ. 1258, 1996 WL 389265, at *1, 1996 U.S.Dist. LEXIS 9634, at *2 (S.D.N.Y. July 11, 1996). The United States may claim a tax lien against any property which has been fraudulently transferred by a debtor. *See United States v. McCombs*, 30 F.3d 310, 321–22 (2d Cir.1994). *See generally United States v. Mazzeo*, No. 98–CV–3060, 2001 WL 393671, at *1, 2001 U.S.Dist. LEXIS 1698,

at *2 (E.D.N.Y. Jan. 10, 2001) (Seybert, J.).

Debtors fraudulently transfer property against the United States when they owe a debt to the United States and they transfer that property: (1) "with actual intent to hinder, delay, or defraud a creditor;" or (2) "without receiving reasonably equivalent value in return" when the debtor (a) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or (b) "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 28 U.S.C. § 3304(b) (2000). Property transfers are fraudulent to the United States whether the debts owed to the United States were incurred prior or subsequent to the transfers. *Id.*

The IRS assessed a trust fund penalty against Faraldi on June 28, 1993, and docketed a $1,800,000.00 federal tax lien against his property with the Suffolk County Clerk on October 20, 1993. *In re Albert V. Faraldi,* No. 800–83212–288, slip op. at 2 (Bankr.E.D.N.Y. Feb. 1, 2002); (United States' Mem. in Supp.Mot. to Withdraw Referral and Consolidate at 2.) Faraldi had already transferred some of his property to his wife in 1991 when the IRS docketed its lien against that property.

The United States may assert a fraudulent transfer claim against Faraldi because he transferred property he owned to his wife and subsequently incurred a debt to the United States. *See* 28 U.S.C. § 3304(b). The United States may accordingly claim a tax lien against that property because it asserts that Faraldi fraudulently transferred it. *See McCombs,* 30 F.3d

at 321–22; *see also Mazzeo,* 2001 WL 393671, at *1, 2001 U.S.Dist. LEXIS 1698, at *2. Consequently, because the United States may claim a tax lien against that property, it may intervene by right in the Third-party Action to protect its rights to that property. *See* 26 U.S.C. § 7424; *Gen. Ins. Co. of Am.,* 1996 WL 389265, at *1, 1996 U.S.Dist. LEXIS 9634, at *2.

The United States may therefore intervene in the Third-party Action to assert its tax lien. The United States Motion to Intervene must accordingly be granted.

### 2. Intervention Under the Federal Rules of Civil Procedure

#### a. Intervention by Right

■ The United States alternatively argues that it may intervene by right in the Third-party Action pursuant to Rule 24 of the Federal Rules of Civil Procedure. The Faraldi Trustee argues that the United States may not intervene by right in the Third-party Action pursuant to Rule 24 of the Federal Rules of Civil Procedure because: (1) the United States failed to demonstrate the timeliness of its motion;[2] and (2) the United States has no interest in the Third-party Action. The United States is correct and the Faraldi Trustee is mistaken.

■ Rule 24 of the Federal Rules of Civil Procedure permits parties to intervene in actions by right: (1) if so authorized by a federal statute; or (2) if they demonstrate an interest that is at risk in the litigation. *See* Fed.R.Civ.P. 24(a)(1)(2). To intervene in actions by right without statutory authorization, parties must: (1) file timely intervention motions; (2) demonstrate an interest in the litigation; (3) demonstrate that their interest in that liti-

---

**2.** The Faraldi Trustee does not argue that the United States' Motion to Intervene is barred by any statute of limitations, but instead argues laches.

gation will be impaired by an unfavorable disposition; and (4) demonstrate that their interest may not be adequately protected by the parties to the litigation. *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123, 128–29 (2d Cir.2001); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir.2001); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir.2001). Failure to satisfy any of those elements warrants denying an intervention motion. *Butler, Fitzgerald & Potter*, 250 F.3d at 176; *D'Amato*, 236 F.3d at 84; *Weisshaus v. Swiss Bankers Ass'n (In re Holocaust Victim Assets Litig.)*, 225 F.3d 191, 197–98 (2d Cir.2000).

■ The interest parties assert in a litigation must be " 'direct, substantial, and legally protectable' " to intervene by right in that litigation. *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir.2001) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990)); *Brennan*, 260 F.3d at 129. That interest may not be speculative or remote. *Peoples Benefit Life Ins. Co.*, 271 F.3d at 415; *Brennan*, 260 F.3d at 129.

■ District Courts determine, within their discretion and under the totality of the circumstances, whether motions to intervene by right without statutory authorization are timely. *D'Amato*, 236 F.3d at 84; *In re Holocaust Victim Assets Litig.*, 225 F.3d at 198; *see Butler, Fitzgerald & Potter*, 250 F.3d at 182. To determine if intervention motions are timely, courts consider: " '(1) how long the applicant had notice of the interest before [he moved] ... to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.' " *D'Amato*, 236 F.3d at 84 (quoting *United States v. Pitney Bowes, Inc.*, 25

F.3d 66, 70 (2d Cir.1994)); *see Butler, Fitzgerald & Potter*, 250 F.3d at 182; *In re Holocaust Victim Assets Litig.*, 225 F.3d at 198.

The United States may first intervene by right in the Third-party Action because 26 U.S.C. § 7424 statutorily grants that right. *See* FED.R.CIV.P. 24(a)(1); *see also* DISCUSSION A.1. *supra.* The United States may also intervene by right in the Third-party Action because: (1) it filed a timely intervention motion; (2) it has a clear interest in the Third-party Action; (3) its interest could be harmed by an unfavorable disposition in that action; and (4) the Gamaldi Trustee may not adequately protect the United States' interests in that action. *See Brennan*, 260 F.3d at 128–29; *Butler, Fitzgerald & Potter*, 250 F.3d at 176; *D'Amato*, 236 F.3d at 84; *see also* FED.R.CIV.P. 24(a)(2).

### i. Timeliness of the United States' Motion

■ The totality of the circumstances demonstrate that the United States' intervention motion is timely. *See D'Amato*, 236 F.3d at 84; *In re Holocaust Victim Assets Litig.*, 225 F.3d at 198; *see also Butler, Fitzgerald & Potter*, 250 F.3d at 182. First, the United States claims that it only recently learned of Faraldi's alleged fraudulent transfers to his wife and of the pending Fraudulent Conveyance Action. *See Butler, Fitzgerald & Potter*, 250 F.3d at 182; *D'Amato*, 236 F.3d at 84; *In re Holocaust Victim Assets Litig.*, 225 F.3d at 198; *Pitney Bowes, Inc.*, 25 F.3d at 70. The United States only appeared in Faraldi's bankruptcy action sometime in August of 2001, which renders that assertion reasonably plausible.

Second, neither the Faraldi Trustee nor the Gamaldi Trustee will be prejudiced if the United States intervenes in the Third-party Action, because the United States

will not unnecessarily delay or complicate that proceeding. *See Butler, Fitzgerald & Potter,* 250 F.3d at 182; *D'Amato,* 236 F.3d at 84; *In re Holocaust Victim Assets Litig.,* 225 F.3d at 198; *Pitney Bowes, Inc.,* 25 F.3d at 70.

Third, the United States may be severely prejudiced if it is not permitted to intervene in the Third-party Action, because it will be denied the opportunity to litigate the ownership of property over which it claims a substantial interest. *See Butler, Fitzgerald & Potter,* 250 F.3d at 182; *D'Amato,* 236 F.3d at 84; *In re Holocaust Victim Assets Litig.,* 225 F.3d at 198; *Pitney Bowes, Inc.,* 25 F.3d at 70.

Finally, unusual circumstances warrant the United States' intervention in the Third-party Action, because Faraldi: (1) may have fraudulently concealed several of his assets for many years; and (2) owes substantial fines for unpaid payroll taxes. *See Butler, Fitzgerald & Potter,* 250 F.3d at 182; *D'Amato,* 236 F.3d at 84; *In re Holocaust Victim Assets Litig.,* 225 F.3d at 198; *Pitney Bowes, Inc.,* 25 F.3d at 70. Accordingly, the totality of the circumstances indicate that the United States' intervention motion is timely.

#### ii. The Other Three Intervention by Right Factors

The other three intervention by right factors also favor the United States' intervention in the Third-party Action. First, the United States has a clear interest in the Third-party Action because it has filed a substantial tax lien against Faraldi's property and might be able to satisfy some of that lien if it could recover the property that Faraldi allegedly transferred fraudulently. *See Brennan,* 260 F.3d at 128–29; *Butler, Fitzgerald & Potter,* 250 F.3d at 176; *D'Amato,* 236 F.3d at 84.

Second, any disposition of the Third-party Action that was unfavorable to the Gamaldi Trustee might terminate the United States' interest in Faraldi's property. *See Brennan,* 260 F.3d at 128–29; *Butler, Fitzgerald & Potter,* 250 F.3d at 176; *D'Amato,* 236 F.3d at 84.

Finally, the Gamaldi Trustee may not adequately protect the 'United States' tax lien interests in that Third-party Action. *See Brennan,* 260 F.3d at 128–29; *Butler, Fitzgerald & Potter,* 250 F.3d at 176; *D'Amato,* 236 F.3d at 84. Therefore, the other three intervention by right factors favor intervention as well.

#### iii Intervention by Right Conclusions

The United States has a statutory right to intervene in the Third-party Action. *See* 26 U.S.C. § 7424; *see also* DISCUSSION A.1. *supra.* It has also satisfied the factors that govern intervention by right under Rule 24's non-statutory intervention procedure. *See Brennan,* 260 F.3d at 128–29; *Butler, Fitzgerald & Potter,* 250 F.3d at 176; *D'Amato,* 236 F.3d at 84. The United States may therefore intervene by right in the Third-party action.

#### b. Permissive Intervention

■ The United States alternatively argues that it should be permitted to intervene in the Third-party Action if the Court concludes that it may not intervene by right. This Court agrees.

■ Parties may be permitted to intervene in actions: (1) where authorized by federal statute; or (2) when there is a common question of law or fact between the movant's claim and the suit in which the movant seeks to intervene. FED. R.CIV.P. 24(b). When considering permissive intervention motions, courts must examine whether intervention will prejudice the parties to the action or cause undue delay. *D'Amato,* 236 F.3d at 84; *In re Holocaust Victim Assets Litig.,* 225 F.3d at 202.

District court permissive intervention rulings are reviewed for abuse of discretion. *Ferenc v. Buchanan Marine, Inc.*, No. 99–9253, 2000 WL 576053, at *1, 2000 U.S.App. LEXIS 9977, at *2 (2d Cir. May 12, 2000). District court permissive intervention rulings are afforded heightened deference however. *Schonfeld v. City of New York*, No. 00–7387, 14 Fed. Appx. 128, 2001 WL 830589, at *3, 2001 U.S.App. LEXIS 16776, at *8 (2d Cir. July 25, 2001); *Ferenc*, 2000 WL 576053, at *1, 2000 U.S.App. LEXIS 9977, at *2–3. In fact, " '[r]eversal of a district court's ... permissive intervention [ruling] is a very rare bird indeed, so seldom seen as to be considered unique.' " *Ferenc*, 2000 WL 576053, at *1, 2000 U.S.App. LEXIS 9977, at *2–3 (quoting *Pitney Bowes, Inc.*, 25 F.3d at 73–74); *see Schonfeld*, 14 Fed. Appx. 128, 2001 WL 830589, at *3, 2001 U.S.App. LEXIS 16776, at *8.

This Court permits the United States to intervene in the Third-party Action. First, as previously noted, the United States may intervene under 26 U.S.C. § 7424. *See* 26 U.S.C. § 7424; Fed. R.Civ.P. 24(a)(2); DISCUSSION A.1. *supra.*

Second, there are common questions of law and fact between the United States' claim to the property that Faraldi allegedly transferred fraudulently and the Gamaldi Trustee's claim to that property. *See* Fed.R.Civ.P. 24(b).

Finally, neither the Faraldi Trustee nor the Gamaldi Trustee will be prejudiced if the United States intervenes in the Third-party Action, because the United States will not unduly hinder or delay that action. *See D'Amato*, 236 F.3d at 84; *In re Holocaust Victim Assets Litig.*, 225 F.3d at 202.

Accordingly, the Court exercises its considerable discretion and permits the United States to intervene in the Third-party Action. *See Schonfeld*, 14 Fed.Appx. 128,

2001 WL 830589, at *3, 2001 U.S.App. LEXIS 16776, at *8; *Ferenc*, 2000 WL 576053, at *1, 2000 U.S.App. LEXIS 9977, at *2–3.

## C. The United States' Second Motion and Withdrawal of the Four Bankruptcy Court Motions

The United States' Second Motion seeks: (1) to withdraw four motions currently pending before the bankruptcy court in Faraldi's bankruptcy action; and (2) to consolidate those motions with the Third-party Action pending before this Court. The United States' Second Motion is granted.

District courts have original jurisdiction over all cases arising under Title 11 of the United States Code. 28 U.S.C. § 1334(a) (2000). District courts may refer cases arising under Title 11 to bankruptcy courts. *Id.* § 157(a).

Bankruptcy cases in this district are automatically referred to bankruptcy courts upon filing pursuant to a standing order issued on August 28, 1986. *See Braniff Int'l Airlines v. Aeron Aviation Res. Holdings II, Inc. (In re Braniff Int'l Airlines)*, 159 B.R. 117, 121 (E.D.N.Y.1993). District courts may withdraw bankruptcy references *sua sponte* or upon motion for cause. 28 U.S.C. § 157(d).

Cause is an undefined term. *South St. Seaport Ltd. P'ship v. Burger Boys (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir.1996); *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)* 4 F.3d 1095, 1101 (2d Cir.1993). Factors district courts consider to determine if cause for withdrawing bankruptcy references exist are: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformi-

ty of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *In re Burger Boys,* 94 F.3d at 762; *see In re Orion Pictures Corp.,* 4 F.3d at 1101; *LTV Steel Co., Inc. v. City of Buffalo (In re Chateaugay Corp.)* No. 00 Civ. 9429, 2002 WL 484950, at *6, 2002 U.S.Dist. LEXIS 5318, at *17–18 (March 29, 2002).

■ The core/non-core factor is the most important factor to consider when determining if cause for withdrawing bankruptcy references exists, because that factor drives the efficiency and uniformity determinations. *In re Burger Boys,* 94 F.3d at 762; *In re Orion Pictures Corp.,* 4 F.3d at 1101. For example, it may be more efficient and may promote uniformity for district courts to decide non-core matters, because bankruptcy courts are only empowered to submit proposed factual findings and legal conclusions to district courts for *de novo* review in non-core matters. *In re Orion Pictures Corp.,* 4 F.3d at 1101. It may conversely be more efficient and may promote uniformity for bankruptcy courts to determine core matters, because bankruptcy courts may be more familiar with the law and facts surrounding those matters. *Id.*

■ Core proceedings include "matters concerning the administration of the estate," "counterclaims by the estate against persons filing claims against the estate," "orders to turn over property of the estate," "proceedings to determine, avoid, or recover fraudulent conveyances," "determinations of the validity, extent, or priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." 28 U.S.C. § 157(b)(1)(A), (C), (E), (H), (K), (O). Matters concerning administration of the estate should be broadly interpreted. *In re Best Products Co.,*

68 F.3d 26, 31 (2d Cir.1995); *In re Orion Pictures Corp.,* 4 F.3d at 1102.

### 1. Core and Non–Core Matters

The first two motions the United States seeks to withdraw from the bankruptcy court concern which party may pursue the Fraudulent Conveyance Action in this Court. Those motions accordingly involve "proceedings to determine, avoid, or recover fraudulent conveyances" and are therefore core matters. *See* 28 U.S.C. § 157(b)(1)(H).

The third Bankruptcy Court motion the United States wishes to withdraw to this Court seeks to reclassify the IRS, New York State and the Gamaldi Trustee as unsecured creditors. That third motion is one to "adjust[ ] . . . the debtor-creditor or the equity security holder relationship," and is therefore also a core matter. *Id.* § 157(b)(1)(O).

The fourth and final motion the United States seeks to withdraw to this Court is the Faraldi Trustee's motion to approve a settlement with Faraldi's wife. The United States did not disclose the terms of that settlement to the Court, but that motion may concern "counterclaims by the estate against persons filing claims against the estate," "orders to turn over property of the estate," or "proceedings to determine, avoid, or recover fraudulent conveyances." *Id.* § 157(b)(1)(C), (E), (H). Accordingly, that motion may concern core matters as well.

■ Therefore, three of the four motions the United States seeks to withdraw to this Court definitively concern core bankruptcy matters, and the fourth may as well. For its Motion to Withdraw the Reference to be granted, the United States must consequently overcome the presumption that bankruptcy courts, and not district courts, should determine core mat-

ters. *See In re Burger Boys,* 94 F.3d at 762; *In re Orion Pictures Corp.,* 4 F.3d at 1101.

### 2. Efficient Use of Judicial Resources

 The first two bankruptcy court motions the United States seeks to withdraw concern who may litigate the Fraudulent Conveyance Action in this Court. The Fraudulent Conveyance Action will proceed in this Court regardless of which party litigates it.

Consequently, judicial resources will be most efficiently allocated if this Court determines which party may litigate the Fraudulent Conveyance Action before it, because that issue presents questions of law and fact common to the substantive Fraudulent Conveyance Action itself. Judicial economy is accordingly best served if this Court heard the first and second motions.

 The third motion the United States seeks to withdraw concerns a pure core matter that is unrelated to either the Fraudulent Conveyance Action or the Third-party Action. The fourth motion the United States seeks to withdraw may similarly concern a matter unrelated to either the Fraudulent Conveyance Action or the Third-party Action.

The bankruptcy court is already familiar with the facts and law surrounding those third and fourth motions and is therefore better placed to decide them. *See In re Orion Pictures Corp.,* 4 F.3d at 1101. Accordingly, judicial resources are better utilized if the third and fourth motions remain before the bankruptcy court.

### 3. Delay and Cost to the Parties

The first two bankruptcy court motions which the United States seeks to withdraw directly relate to the Fraudulent Convey-

ance Action pending in this Court. The parties will save time and money if they argue those motions before this Court in the first instance, because any appeal they would take of the bankruptcy court's ruling on those motions would ultimately be presented to this Court anyway. *In re Burger Boys,* 94 F.3d at 762; *In re Orion Pictures Corp.,* 4 F.3d at 1101. Accordingly, this Court will prevent unnecessary cost and delay to the parties by withdrawing those two motions. *See In re Burger Boys,* 94 F.3d at 762; *In re Orion Pictures Corp.,* 4 F.3d at 1101.

Conversely, it would cause undue delay and increase the cost to the parties to litigate the third and fourth motions before this Court, because those motions are generally unrelated to any other matters pending before this Court, and the bankruptcy court is already familiar with the law and facts surrounding those motions. *See In re Burger Boys,* 94 F.3d at 762; *In re Orion Pictures Corp.,* 4 F.3d at 1101. Accordingly, those two motions are better left before the bankruptcy court.

### 4. Uniformity in Bankruptcy Administration

The uniformity factor favors withdrawing the first and second motions to this Court and counsels leaving the third and fourth motions before the bankruptcy court. This Court will decide the Fraudulent Conveyance Action and should therefore also decide which party has the right to litigate that action. Deciding who may litigate that action may entail making findings and rulings that substantively affect the Fraudulent Conveyance Action itself. Uniformity is therefore assured if the same court that ultimately decides the Fraudulent Conveyance Action also makes the preliminary determination as to which party may litigate it.

That same rationale suggests that the third and fourth motions should not be removed from the bankruptcy court. That court is already familiar with the law and facts surrounding the third and fourth motions, and those motions are more related to Faraldi's bankruptcy proceeding than the Third-party Action. Consequently, uniformity would not be promoted if this Court decided those motions.

It accordingly promotes consistency in bankruptcy administration for this Court to hear the first two motions and for the bankruptcy court to hear the third and fourth motions.

### 5. Prevention of Forum Shopping

Hearing the first two motions in this Court and the third and fourth motions in the bankruptcy court will also prevent forum shopping. The Faraldi Trustee would be allowed to forum shop if he were permitted to argue before another court which party may litigate the Third-party Action before this Court.

Conversely, the United States would be permitted to forum shop if it were allowed to argue the third and fourth motions before this Court when those motions are unrelated to the Third-party Action. Accordingly, the first and second motions should be heard by this Court and the third and fourth motions should be heard by the bankruptcy court.

### 6. Other Factors and Conclusions

The Court does not need to consider other factors to decide the United States' Second Motion. The factors that are relevant favor: (1) withdrawing the first two motions to this Court; and (2) leaving the third and fourth motions before the bankruptcy court. Accordingly, this Court will withdraw the first two bankruptcy motions concerning which parties may litigate the Fraudulent Conveyance Action and will leave the third and fourth motions before the bankruptcy court.

### CONCLUSION

The United States' Motion to Intervene is GRANTED. The United States' Motion to Partially Withdraw the Reference is GRANTED IN PART and DENIED IN PART.

SO ORDERED.