**In re Walter Frank KIEFER, Debtor.**

**Laborers' Pension Trust Fund–Detroit and Vicinity, et al., Plaintiffs,**

v.

**Walter Frank Kiefer, Defendant.**

**Civ. No. 01–40129.**

United States District Court,
E.D. Michigan,
Southern Division.

April 17, 2002.

Earle I. Erman, Craig E. Zucker, Erman, Teicher, Southfield, MI, for Laborers Pension Trust Fund, Laborers Vacation and Holiday Trust Fund, Detroit and Vicinity, Laborers and Poured Concrete Workers Insurance Fund, and Michigan Laborers Training Fund.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court is "Plaintiffs' motion for reconsideration of order entered on March 27, 2002" [docket entry 10]. Pursuant to Local Rule 7.1(e), the Court concludes that a hearing would not aid substantially in the disposition of this motion. For the reasons set forth below, the Court shall grant Plaintiffs' motion and withdraw this proceeding from the Bankruptcy Court.

## I  BACKGROUND

On March 27, 2002, this Court ordered that Plaintiffs' motion pursuant to 28

U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011(a) to withdraw the reference of adversary proceeding from the bankruptcy court [docket entry 1] be denied. In large part, the Court so ruled because Plaintiffs' brief in support of their motion was not presented to this Court.

As is plain from the brief in support of Plaintiffs' motion for reconsideration, however, Plaintiffs properly filed a brief in support of their motion. Plaintiffs filed that brief in the Bankruptcy Court. The Bankruptcy Court, however, seems to have committed an administrative error by not forwarding that brief to this Court. *See* Local Rule 83.5(e)(1)(C).

In other words, Plaintiffs' counsel filed a brief correctly. Through no fault of Plaintiffs' counsel, that brief never reached this Court. Because this Court did not have Plaintiffs' brief in support of the motion, and because of the arguments in Defendant's response brief, this Court denied withdrawal on March 27, 2002. Plaintiffs now move for this Court to reconsider its order of March 27, 2002.

## II  LEGAL STANDARD

To succeed on a motion for reconsideration, the moving party "must not only demonstrate a palpable defect by which the court and the parties have been misled but also must show that correcting the defect will result in a different disposition of the case." E.D. Mich. Local Rule 7.1(g)(3). A "palpable defect" is a defect that is obvious, clear, unmistakable, manifest or plain. *See* Blacks Law Dictionary 1110 (6th ed.1990); Webster's New World Dictionary 974 (3rd Ed.1988); Webster's New World Thesaurus 544 (Rev. Ed.1985). "Generally ... the court will not grant motions for ... reconsideration that merely present the same issues ruled upon by the court, either expressly or by reason-

able implication." E.D. Mich. Local Rule 7.1(g)(3).

## III  ANALYSIS

█ In this case, a palpable defect—the mistaken belief that Plaintiffs had not properly filed a brief in support of their motion for a withdrawal of the reference—underlay this Court's order of March 27. Whether Plaintiffs succeed on their motion for reconsideration thus turns on whether correcting that defect (i.e., considering Plaintiffs' brief in support of the motion for withdrawal) would change the disposition of the matter. For the reasons set forth below, the Court resolves this question in the affirmative.

█ Plaintiffs first argue that withdrawal is mandatory. Under § 157(d), withdrawal is required where the movant establishes that: (1) the movant is a party; (2) the motion is timely; and (3) resolution of the proceeding before the Bankruptcy Court requires consideration of both Title 11 and another federal law regulating organizations or activities affecting interstate commerce. *In re Baldwin–United Corp.,* 47 B.R. 898, 899 (S.D.Ohio 1984).

The movants are parties to this action. As per the Honorable Burton Perlman's order of January 17, 2002, with which this Court agrees, this motion is timely. Therefore, the determinative question is whether "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). If so, this Court "shall" withdraw the proceeding. *Id.*

Plaintiffs argue in the affirmative, maintaining in their motion that the "reference should be withdrawn from the Bankruptcy Court because ... this matter requires, in part, the consideration of" the Employee Retirement Income Security Act of 1974,

as amended ("ERISA"), 28 U.S.C. § 1001, *et seq.* (Mot. at ¶ 1.) Plaintiffs elaborate on this point in their brief, stating that, during a scheduling conference, "Defendant asserted that he disputed several issues of liability" requiring the consideration of federal laws outside the Bankruptcy Code that affect interstate commerce. (Pl. Br. at 5.) It appears that one of these disputed issues of liability is, as Defendant admits in his response brief, "whether Defendant acted as a fiduciary for purposes of ERISA." (Def. Br. at 9.) Plaintiffs have filed a reply brief in which they echo Defendant's response brief on this point, asserting that whether Defendant violated a fiduciary duty under ERISA is at issue in this proceeding. (Pl. Reply Br. at 3.)

It thus appears that all parties agree that there are two disputed issues necessary to the resolution of this case that require consideration of a statute that is both outside of the Bankruptcy Code and affecting interstate commerce: (1) whether Defendant was an ERISA fiduciary; and, if so, (2) whether Defendant violated that fiduciary duty. This would seem to settle the matter. Section 157(d), as discussed above, mandates withdrawal whenever "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," and ERISA is obviously a statute that affects interstate commerce.

Quoting *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984), however, Defendant argues that § 157(d) mandates withdrawal of the reference only where "resolution of the claims will require substantial and material consideration of ... non-Code statutes." *Id.* at 705. The *White* court enunciated this "substantial and material consideration" test only after examining the structure and legislative history of § 157(d), concluding that Congress intended courts to apply a more restrictive interpretation of the provision than its text alone would suggest.

Plaintiffs, on the other hand, urge the Court to interpret § 157(d) as per *Martin v. Friedman*, 133 B.R. 609 (N.D.Ohio 1991). The *Martin* court held that, where the defendant's fiduciary duties under ERISA are an issue necessary to the resolution of the case, withdrawal is mandated. *Id.* at 611–12. In reaching this conclusion, the district court relied upon the plain language of § 157(d), reasoning that withdrawal was mandatory because resolving the action would merely "require consideration of federal laws [ERISA] regulating interstate commerce, in addition to title 11 of the Bankruptcy Code." *Id.* at 612. Defendant admits that this case requires consideration of whether Defendant has violated a fiduciary duty under ERISA; i.e., Defendant admits that resolution of this case requires at least some consideration of a federal law outside of Title 11. Therefore, were this Court to follow the *Martin* court's literal interpretation of § 157(d), it is clear that withdrawal would be mandatory. For the following reasons, this Court shall follow *Martin*, decline to follow *White*, and order withdrawal of this proceeding.

As a matter of statutory interpretation, *Martin* provides the superior approach. When interpreting the meaning of a statutory text, the Court looks "for a sort of 'objectified' intent—the intent that a reasonable person would gather from the text of the law, placed alongside the remainder of the *corpus juris*." Antonin Scalia, *A Matter of Interpretation* 17 (Amy Gutmann ed., 1997). This is so because "[t]he text is the law, and it is the text that must be observed." *Id.* at 22. That is to say, the Court is not concerned with the legislature's subjective intent, but with what the

words of a statute actually mean. *Id.* at 23.

■ The Court must begin this process "with the statutory language itself, considering both the text and the structure of the statute." *Key v. Grayson,* 163 F.Supp.2d 697, 703 (E.D.Mich.2001) (Gadola, J.). The statutory language in this case is plain: withdrawal is mandated whenever a party moves for withdrawal and "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). As all parties have made clear, resolution of the proceeding at bar requires consideration of federal laws outside of Title 11 insofar as a court must determine whether Defendant violated a fiduciary duty under ERISA. Therefore, the plain meaning of the statute dictates that this Court must withdraw the proceeding. Where, as here, the text of a statute is plain, the Court's inquiry is at an end. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

In *White,* however, the district court relied upon the Bankruptcy Code's structure and legislative history when it delineated the "substantial and material consideration" test. *Id.* at 699–705. Were the Court to follow *White,* it might rule in Defendant's favor. This is so because, although the record makes clear that resolution of this case requires a decision as to whether Defendant violated a fiduciary obligation under ERISA, it is not at all clear that resolution of the ERISA issue will require *substantial* consideration. *See generally Herman v. Stetler,* 241 B.R. 206, 210 (E.D.Wis.1999) (discussing the difference between *Martin's* literal interpretation of the statute and the "substantial and material consideration test"). That is to say, determination of that question may be a necessary, but simple, aspect of a court's adjudication of this case. This Court respectfully disagrees with *White,* however, because neither the Bankruptcy Code's structure nor legislative history weighs in favor of the "substantial and material consideration" test.

Regarding the Bankruptcy Code's structure, the *White* court reasoned that "any reading of § 157(d) which limits bankruptcy court jurisdiction to questions arising solely under the Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous Code provisions themselves require reference to other state and federal law." *Id.* at 703 (emphasis in original). The flaw in this logic is that a broader reading of § 157(d) would not, *ipso facto,* "limit[ ] bankruptcy court jurisdiction to questions arising solely under the Code." Instead, literal interpretation of § 157(d) would preclude bankruptcy court jurisdiction only when (1) consideration of a federal law that regulates commerce and is outside of the Bankruptcy Code were required to resolve the case *and* (2) a party moved for withdrawal of the proceeding. *Martin,* 133 B.R. at 611–12. Because there are many cases in which the former, but not the latter, prerequisite to mandatory withdrawal exists,[1] it is apparent that a broad-

---

1. Bankruptcy courts, for example, provide much of the case law holding unconstitutional the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (RFRA). *See, e.g., In re Saunders,* 215 B.R. 800, 803–06 (Bankr. D.Mass.1997) (holding that RFRA violates the Establishment Clause); *Fitzgerald v. Magic Valley Evangelical Free Church, Inc.,* 200 B.R. 884, 899 (Bankr.D.Idaho 1996) (holding RFRA unconstitutional), *rev'd,* 220 B.R. 386 (D.Idaho 1998). *See generally* Natalie A. Hurley, *Religious Entanglement and the Bankruptcy System—Avoidable Transfers and RFRA,* 27 U. Mem. L.Rev. 177 (1996). In these cases, it

er reading of § 157(d) than that suggested by the *White* court would not unduly deprive bankruptcy courts of jurisdiction, nor would such a reading render superfluous the other Bankruptcy Code provisions that contemplate bankruptcy courts' application of federal statutes outside of the Bankruptcy Code. The Court now turns to the *White* court's reliance on legislative history as an aid to interpretation of § 157(d).

■ "The legislative history of a statute is the history of its consideration and enactment." *Sullivan v. Finkelstein*, 496 U.S. 617, 631, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (Scalia, J., concurring). The legitimate end of legislative history, in this Court's opinion, is not to apprehend the subjective intent of Congress. This is so because legislation is a compromise, the product of alternately opposing and cooperating political forces that may ultimately vote in favor of the same bill while harboring diametrically opposite intentions. *In re Joint Eastern and Southern Dist. Asbestos Litig.*, No. 88 CIV. 1286, 1990 WL 124330, at *2 (S.D.N.Y. Aug. 20, 1990) (Leval, J.). The search for a subjective and uniform intent motivating the hundreds of members of Congress who voted for a statute is, therefore, almost always a chimera. When a court "finds" such a consistent intent motivating Congress, and then reads the statute through the Procrustean lens of that intent, that court may well undo the very compromises that our elected representatives had deliberately enacted into legislation. *Id.* (citing Rich-

ard A. Posner, *Economics, Politics, and the Reading of Statutes and the Constitution*, 49 U. Chi. L.Rev. 263 (1982)). In other words, judicial divination of a consistent, subjective intent underlying legislation is often undemocratic. *See Detroit Edison Co. v. Celadon Trucking Co.*, 248 Mich.App. 118, 638 N.W.2d 169, 172 n. 6 (2001) (Bandstra, J.).

■ This is not to say that legislative history can never be useful. As discussed above, that which illuminates "the intent that a reasonable person would gather from the text of the law, placed alongside the remainder of the *corpus juris*," is a legitimate aid to statutory interpretation. Legislative history, if it were of sufficient contemporary prominence, might perform such a role by showing the social and historical context in which the words in a statute were used by legislators and (most importantly) understood by the American people.

For example, courts often cite to the letters of Publius as published in the Federalist. These essays are, by the definition discussed above, legislative history: they are part of the context within which the Constitution was considered and enacted. Because the Federalist was widely "published while the constitution was before the nation for adoption or rejection," [2] *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 418, 5 L.Ed. 257 (1821), however, it was of sufficient prominence to shed light on what a reasonable person would have under-

---

is obvious that federal law outside the Bankruptcy Code was a substantial and material consideration underlying the bankruptcy courts' holdings, yet no party removed the case under § 157(d).

2. General Washington attested to the historical prominence of the Federalist when he wrote that defenders of the proposed Constitution "have thrown new lights upon the science of Government, they have given the

rights of man a full and fair discussion, and have explained them in so clear and forcible a manner as cannot fail to make a lasting impression upon those who read the best publications on the subject, and particularly the pieces under the signature of Publius." Letter from George Washington to John Armstrong, Apr. 25, 1788, *in* 2 *The Debate on the Constitution* 420, 422 (Bernard Bailyn ed., 1993).

stood the Constitution's text to mean. The Federalist, in many cases, therefore helps courts to ascertain the "objectified intent" that Justice Scalia discusses. The Federalist is not a useful tool when used to divine the subjective intent of the Framers, which, as discussed above, is irrelevant.

■ What is true of the Federalist is true of other legislative history. Where legislative history helps the Court to understand words' objective meaning, it is a legitimate aid to interpretation. Where legislative history does not aid in such an endeavor, however, it is not relevant to statutory interpretation. Applying that principle to this case, this Court declines to follow *White* and concludes that legislative history is not a sufficient basis for concluding that § 157(d) requires a district court to withdraw the reference only where "resolution of the claims will require *substantial and material consideration* of ... non-Code statutes." This is so for two reasons.

First, the text of the provision in question, as discussed above, is not ambiguous. Accordingly, there is no need to resort to legislative history. Second, even if § 157(d) were ambiguous, the particular legislative history upon which the *White* court relied does not illuminate "the intent that a reasonable person would gather from the text of the law, placed alongside the remainder of the *corpus juris.*"

The *White* court discussed at length the Senate Report concerning § 157(d) and some statements that Senator DeConcini and Representative Kastenmeier made during legislative debates. *White,* 42 B.R. at 699–700. As the *White* court itself noted, however, these sources were "[s]cattered in the legislative history." *White,* 42 B.R. at 699. This Court sees no reason to believe that scattered comments within § 157(d)'s legislative history show what a reasonable person would have understood § 157(d) to mean. Having reviewed carefully the legislative history discussed in *White,* moreover, this Court agrees with a scholar who has concluded that "[t]he legislative history of the provision does not reveal a clear purpose for section 157(d)." Erich D. Anderson, *Closing the Escape Hatch in the Mandatory Withdrawal Provision of 28 U.S.C. § 157(d),* 36 UCLA L.Rev. 417, 438 (1988).

In short, this Court finds *White* to be unpersuasive because, contrary to *White,* this Court is not convinced that the structure of the Bankruptcy Code or legislative history requires a narrow reading of § 157(d). This Court instead, for reasons discussed above, finds the *Martin* court's literal approach to § 157(d) to be correct and holds that withdrawal is mandatory.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that "Plaintiffs' motion for reconsideration of order entered on March 27, 2002" [docket entry 10] is **GRANTED.**

**IT IS FURTHER ORDERED** that the reference of adversary proceeding is **WITHDRAWN** from the Bankruptcy Court.

**SO ORDERED.**