Ydalia **RODRIGUEZ, Maria Antonieta Herrera, David Herrera, Lucy Moreno, Alfonso Moreno, Plaintiffs,**

v.

**COUNTRYWIDE HOME LOANS, INC., Defendant.**

**Civil Action No. B–09–070.**

United States District Court, S.D. Texas, Brownsville Division.

Dec. 3, 2009.

Ellen C. Stone, The Stone Law Firm, PC, Brownsville, TX, Karen L. Kellett, The Kellett Law Firm, Dallas, TX, Shennan Kavanagh, Roddy Klien, et al., Boston, MA, for Plaintiffs.

Barabara E. Rutkowski, Goodwin Procter, Washington, DC, Elizabeth Carol Freeman, Porter & Hedges, LLP, Thomas H. Grace, Locke Lord Bissell & Liddell, LLP, Houston, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANDREW S. HANEN, District Judge.

Before this Court are the objections to a Report and Recommendation, which denies Defendant's Motion to Withdraw the Reference (Docket No. 1). For the reasons set forth below, the Court adopts the recommendation and DENIES the Defendant's motion to Withdraw the Reference.

## I.  PROCEDURAL HISTORY

Plaintiffs Ydalia Rodriguez, Maria Antonieta Herrera, David Herrera, Lucy Moreno, and Alfonso Moreno (Plaintiffs) are former Chapter 13 debtors who either have or had mortgage contracts with Defendant Countrywide Home Loans, Inc. (Countrywide). Each plaintiff had a Chapter 13 plan confirmed by the United States Bankruptcy Court for the Southern District of Texas. After confirmation, each plaintiff made the payments required under their Chapter 13 plans and received a discharge from bankruptcy. Plaintiffs allege that, after receiving their discharges, Countrywide sought to collect fees and expenses it had allegedly incurred, but not disclosed, during the pendency of the Plaintiffs' Chapter 13 proceedings and that Countrywide also allegedly failed to obtain approval for these fees or expenses from the bankruptcy court. Based on these outstanding fees and expenses, Countrywide allegedly threatened to foreclose, and in

some cases actually foreclosed, on the Plaintiffs' homes when they did not pay the accumulated charges.

Plaintiffs filed an adversary proceeding against Countrywide as part of Plaintiff Rodriguez's Chapter 13 bankruptcy case asserting that the collection of these post-petition, pre-discharge fees without prior disclosure or approval to the bankruptcy court violated the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Plaintiffs' confirmed plans. Plaintiffs also contend that the fees and expenses charged were unreasonable. Plaintiffs further claim that Countrywide used improper accounting methods in allocating mortgage payments they made during the pendency of their bankruptcy cases. Plaintiffs seek to certify two district-wide and nationwide classes of debtors with respect to each of these claims.[1]

Countrywide filed a Motion to Dismiss (Bankr.Docket No. 63) and Motion to Withdraw the Reference (Docket No. 64) in the bankruptcy court. The Motion to Dismiss was denied, in part, by the bankruptcy court. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr.S.D.Tex.2008) (severing certain issues for consideration on summary judgment). The bankruptcy court issued a Report and Recommendation (Report) with respect to the Motion to Withdraw the Reference recommending that this Court deny the motion.

## II. CHAPTER 13, MORTGAGES, AND POST–PETITION EXPENSES

There is currently a split among courts on how mortgage lenders may collect post-petition, pre-discharge fees in Chapter 13

plans. Resolution of this split, if proper on a motion to withdraw the reference, could affect whether withdrawal is appropriate. Chapter 13 protects mortgage contracts, but at the same time, enables a debtor to eliminate past arrearages owed on a mortgage. Mortgage contracts may not be modified by a Chapter 13 plan. *See* 11 U.S.C. § 1322(b)(2). A Chapter 13 debtor, however, is given the opportunity to pay off arrearages owed on a mortgage. *Id.* § 1322(b)(5). Lenders often incur fees and expenses in order to protect their security interest in a debtor's home during the pendency of a Chapter 13 case. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 441 (Bankr.S.D.Tex.2008). These fees and expenses are permitted under the mortgage contracts. *Id.* The split arises with respect to whether the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure require a lender to provide the debtor or the bankruptcy court with notice of these post-petition, pre-discharge fees and expenses and whether such fees and expenses must be approved by the bankruptcy court prior to collection. *Compare Padilla v. Wells Fargo Home Mortgage, Inc. ("Wells Fargo")*, 379 B.R. 643 (Bankr. S.D.Tex.2007), *with Padilla v. GMAC Mortgage Corp. ("GMAC")*, 389 B.R. 409 (Bankr.E.D.Pa.2008).

### a. *The Wells Fargo Case—Disclosure and Approval Required*

In *Wells Fargo*, the United States Bankruptcy Court for the Southern District of Texas held that a lender must disclose and seek bankruptcy court approval of fees and expenses charged post-petition and pre-

---

**1.** Pursuant to a Case Management Order issued by the bankruptcy court, discovery is currently limited to the merits of the individual Plaintiffs' claims and the potential certification of the two Southern District of Texas classes. The distinctions between the two classes are not relevant to the resolution of Countrywide's Motion to Withdraw the Reference.

discharge.[2] *Wells Fargo,* 379 B.R. at 659. Both notice and approval of the fees must occur before discharge. *Id.* The court concluded that, post-petition and pre-confirmation, 11 U.S.C. § 506(b) and Federal Rule of Bankruptcy Procedure 2016(a) govern a mortgage lender's ability to collect fees and expenses. *Id.* at 654. Section 506(b) authorizes oversecured creditors to recover interest and reasonable fees and expenses that accrue between the petition date and plan confirmation. *Id.* (citing § 506). Oversecured lenders' requests for fees and expenses are closely scrutinized by bankruptcy courts through Rule 2016(a) applications. *Id.* Rule 2016(a) provides, in pertinent part:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

Fed. R. Bankr.P.2016(a). The *Wells Fargo* court held that Rule 2016(a)'s plain language requires creditors to file an application with the bankruptcy court (i.e., disclose fees and expenses charged) and then obtain court approval before collecting fees and expenses incurred post-petition, but prior to plan confirmation. *Wells Fargo,* 379 B.R. at 655 (citing *Jones v. Wells Fargo Home Mortgage,* 366 B.R. 584, 594–95 (Bankr.E.D.La.2007)). The court rejected the lender's argument that Rule 2016(a) only applies to entities seeking reimbursement for services on behalf of the estate, finding that Rule 2016(a) does not contain any such limitation. *Id.*

The *Wells Fargo* court concluded that, following confirmation, 11 U.S.C. § 1322(b)(2), Rule 2016(a), the confirmation order, and applicable non-bankruptcy law control how fees and expenses may be collected. *Id.* at 655–56. While § 1322(b)(2) "requires a confirmed plan to preserve a lenders' pre-petition rights under its pre-petition contract ... [a] lender's *exercise* of contract rights is not without its limits." *Id.* The court held that Rule 2016(a) is applicable post-confirmation as its language contains no limitation on its applicability. *Id.* at 656. The *Wells Fargo* court noted that Rule 2016 does not deny or modify a lender's contractual rights to charge and collect post-petition expenses in violation of § 1322(b)(2), but merely provides the procedural method for asserting those rights during bankruptcy. *Id.*

The court also held that § 1322(b)(2) incorporated the lenders' pre-petition contractual rights into the confirmed Chapter 13 plan. *Id.* at 659 (citing *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 328, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)). Since Texas law and the mortgage contracts only permitted the collection of those fees and expenses that were reasonable and necessary, *Wells Fargo* held that these limitations were incorporated into the Chapter 13 plan by § 1322(b)(2). Thus, to the extent the lenders collected fees and expenses that were not reasonable under Texas law or authorized by their contracts, the lenders also violated the Chapter 13 plan. *Id.* at 661. To enforce this term of the plan, *Wells Fargo* held that the bankruptcy court, the trustee and the debtors

---

**2.** The United States District Court for the Southern District of Texas adopted this reasoning in a similar case. *See Cano v. GMAC Mortgage Corp.,* No. 09–129 (S.D.Tex. Sept. 29, 2009).

had to be informed of the lender's charges, which would be done by virtue of the Rule 2016 application. *See id.*

Finally, the court in *Wells Fargo* noted that debtors could not realistically obtain a "fresh start" if mortgage lenders could charge a debtor's account without disclosure. *Id.* Once debtors pay all of the "cure" payments required by their plans, the lenders could not "deny them the fresh start to which they are entitled." *Id.* Without Rule 2016(a) applications, the bankruptcy courts, trustees, and debtors would lack any meaningful ability to ensure this "fresh start." *Id.* at 659. The *Wells Fargo* court therefore concluded that Rule 2016(a) applies to all fees and expenses charged post-petition, pre-discharge and requires lenders to disclose and seek approval of fees and expenses before discharge. *Id.*

b. *The GMAC Case—No Disclosure or Approval Requirement*

The *GMAC* court initially noted that for a notice or approval requirement to exist, the debtor had to establish the lender had a legal duty to obtain court approval of post-petition legal expenses or at least provide the debtor notice that such expenses were being charged and that the failure to provide notice or seek approval prohibited collection of the charges. 389 B.R. 409, 434 (Bankr.E.D.Pa.2008). The court observed that neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure "address directly the mechanics of the debtor's postpetition contractual performance within the chapter 13 rehabilitation environment." *Id.* The *GMAC* court disagreed with the premise that 11 U.S.C. § 506(b) required notice and approval of fees that a lender does not attempt to collect until after discharge. *Id.*

According to *GMAC*, this premise fails to consider the differences between Chapter 13 plans that propose to fully satisfy or

"payoff" a secured claim under § 1322(a)(5) and plans that "cure" secured claims under § 1322(b)(5). *Id.* at 440. A "payoff plan" requires the debtor to pay off the entire secured claim and then the debtor is discharged from the underlying debt. *Id.* (citing §§ 1325(a)(5)(B)(II), 1328(a)). A secured creditor that fails to seek fees and expenses during the pendency of the payoff plan loses the ability to collect those fees after discharge. *Id.* A "cure plan" corrects arrearages owed on a secured claim pursuant to § 1322(b)(5). *Id.* After completion of the plan, there is no discharge of the debt and discharge reinstates the pre-petition contract between the lender and debtor. *Id.* (citing § 1328(a)(1)). The court concluded:

> Because there is no discharge and the parties' contract passes through the chapter 13 case unaffected, it follows that after the conclusion of the bankruptcy case, the secured creditor may collect all charges lawfully falling due under the contract that were not paid during the pendency of the bankruptcy plan. For that contractual right to be cut off, there must be a source of authority that imposes some type of procedural deadline in the bankruptcy case.

*Id.*

*GMAC* held that neither § 506(b) nor § 1322(b)(5) contain an express notice or deadline restriction. *Id.* at 441. According to *GMAC*, section 1322(b)(5) pertains only to a debtor's obligation to cure arrearages and imposes no obligations on the lender. *Id.* In the absence of an express statutory intent to impose a procedural notice or deadline restriction on creditors, the *GMAC* court found no justification for implying any such deadline. *Id.* In further support of this holding, *GMAC* noted that other courts have found it necessary to impose notice and approval procedures for fees and expenses charged by mortgage

lenders during bankruptcy through rules of court or provisions in Chapter 13 plans. *GMAC,* 389 B.R. at 441 (citing, e.g., Local Bankruptcy Rule 3070–1(B) (Bankr. S.D.Fla.); *In re Watson,* 384 B.R. 697, 699 (Bankr.D.Del.2008)). Lastly, *GMAC* observed that, by its plain language, Rule 2016(a) only applies to creditors seeking legal expenses "from the bankruptcy estate." *Id.* at 443. Rule 2016(a) therefore could not apply to impose any requirements on a lender who sought payment post-discharge, when the bankruptcy estate ceased to exist by operation of law. *Id.* (citing 11 U.S.C. § 554(c)).

The court in *GMAC* acknowledged, but disagreed, with the holdings in *Wells Fargo* and similarly decided cases:

> From a policy perspective, a rational, and perhaps even compelling case, can be made that the bankruptcy system should impose disclosure and/or other procedural requirements on a secured creditor's right to assess legal expenses arising postpetition in a case in which the creditor's claim is being treated and cured in a confirmed chapter 13 plan through 11 U.S.C. § 1322(b)(5) . . . .
>
> Nevertheless, whatever merits . . . the policy arguments may have, I find no source of law that imposes a requirement that a secured creditor provide a debtor with notice of postpetition legal expenses. . . . In short, I am not persuaded that the policy argument is grounded sufficiently in either the Bankruptcy code or the rules of court to afford it the force of law.

*Id.* at 436.

## III. MANDATORY WITHDRAWAL OF THE BANKRUPTCY REFERENCE

### A. *Standard of Review*

A district court must withdraw an adversary proceeding "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). The ambiguity of the term "consideration" has generated two standards of review concerning mandatory withdrawal. *Compare In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 952 (7th Cir.1996), *with Laborers' Pension Trust Fund–Detroit & Vicinity v. Kiefer (In re Kiefer),* 276 B.R. 196, 199–200 (E.D.Mich.2002). The majority of courts interpret the provision restrictively, finding withdrawal mandatory only when a claim or defense entails "material and substantial consideration" of non-Bankruptcy Code federal law. *See In re Vicars Ins. Agency, Inc.,* 96 F.3d at 952; *Levine v. M & A Custom Home Builder & Developer,* 400 B.R. 200, 203 (S.D.Tex.2008). These courts hold that § 157(d) cannot be given its broadest literal reading "for sending every proceeding that required passing 'consideration' of non-bankruptcy law back to the district court would 'eviscerate much of the work of the bankruptcy courts.'" *In re Vicars Ins. Agency, Inc.,* 96 F.3d at 952 (quoting *O'Connell v. Terranova,* 112 B.R. 534, 536 (S.D.N.Y.1990)). This premise finds support from the legislative history establishing § 157(d) which indicates the provision is to be interpreted narrowly. *See id.* The *Vicars* court noted that permitting withdrawal when any non-bankruptcy federal question is implicated, even in a minor way, and a party requests withdrawal, would "encourage delaying tactics (perhaps further draining the resources of the debtor), forum shopping, and generally unnecessary litigation." *Id.* This could not have been the intent of Congress in establishing § 157(d). *See id.* Each district court in the Fifth Circuit that has considered the issue, including those in the Southern District of Texas, has adopted

the "material and substantial consideration" test.[3] *See Levine*, 400 B.R. at 203; *Harris v. Washington Mutual Home Loans, Inc. (In re Harris)*, 312 B.R. 591, 595 (N.D.Miss.2004); *Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.)*, 161 B.R. 21, 24 (E.D.La.1993).

Two district courts have rejected the substantial and material test in favor of a broad, literal interpretation of § 157(d) that would require withdrawal anytime a non-bankruptcy federal law is involved and a party requests withdrawal. *In re Kiefer*, 276 B.R. at 199–200; *see also Martin v. Friedman*, 133 B.R. 609, 612 (N.D.Ohio 1991). This theory relies on the literal language of the statute and notes the absence of any qualifying or narrowing term associated with the term "consideration." *See id.* The *Kiefer* court rejected the "evisceration" argument, finding that the requirement in the statute of a petition for withdrawal was a sufficient barrier to any possible harm to the overall jurisdiction of bankruptcy courts.

█ The majority interpretation appears to best capture the actual meaning of § 157(d), given the provision's legislative history and the potential for abuse from a broader reading. Countrywide, apart from identifying the contrary case law, has not provided any compelling reason for this Court to depart from the restrictive interpretation of § 157(d) adopted by the district courts in this circuit and the majority of courts nationwide. The Court therefore will apply the "substantial and material" standard to Countrywide's request for mandatory withdrawal.

█ To find that a claim involves "substantial and material consideration" of non-bankruptcy federal law, the court must find the claim will involve an interpretation of the federal law rather than the mere application of well-settled law. *In re Vicars Ins. Agency, Inc.*, 96 F.3d at 953–54 (citing *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991)). Withdrawal is thus mandatory "when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." *Id.* at 954.

B. *Discussion*

█ Countrywide contends that even under the "substantial and material" test, withdrawal is mandatory in this action because resolution of the Plaintiffs' claims requires consideration of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601–2617. RESPA governs the administration of escrow accounts in the servicing of home mortgage loans. *See* § 2609; 24 C.F.R. § 3500.17. Urging this Court to adopt and apply *GMAC*, Countrywide contends that absent notice and approval requirements in the Bankruptcy Code or Rules, resolution of the Plaintiffs' claims will turn on the contracts and RESPA's notice and accounting provisions. *See, e.g.*, § 3500.17(f)(3)-(5), (i)(2) (exempting lenders from providing a bankrupt borrower annual escrow statements and requiring lenders to provide escrow account payment histories to debtors within ninety days of their accounts becoming current).

Plaintiffs rely on *Wells Fargo* and similarly decided case law in asserting that their claims sound solely in the procedural limitations imposed on lenders by the Bankruptcy Code and Rules. Plaintiffs also note that they have not pleaded a

---

**3.** The Fifth Circuit has not yet addressed the standard to be applied to mandatory withdrawal.

cause of action based on RESPA, are not seeking any recovery under RESPA, nor are they raising any state-law claims that may be preempted by RESPA. Countrywide has not asserted RESPA as an affirmative defense.

The Report and Recommendation before this Court follows the *Wells Fargo* finding of notice and approval restrictions on the collection of fees under the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016(a).[4] The Report concludes that, at most, it may have to apply RESPA to understand how payments were allocated, but that such application would only involve an application of settled law. *See also Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*, 395 B.R. 7, 8 (E.D.Mich.2008) (noting when reviewing similar claims that "[t]he mere fact that ... RESPA may be 'implicated' ... does not suffice to require withdrawal of the reference.... Countrywide has not demonstrated that the bankruptcy court will be required [to] make a 'significant interpretation' of these statutes [including RESPA], or that it will have to do anything more than apply established law to the facts of this particular case").

Even if the bankruptcy court finds that RESPA were to apply to the Plaintiffs' claims, Countrywide has not identified any substantial, unsettled questions of law regarding notice or approval under RESPA. Assuming *GMAC* applies and there are no notice or approval restrictions under the Bankruptcy Code, the bankruptcy court would appear only to have to apply the established law concerning RESPA to the Plaintiffs' claims. Countrywide then does not appear to have demonstrated that withdrawal of the reference is mandatory; it has not identified any claims or defenses that will require "substantial and material" consideration of non-bankruptcy federal law.

## IV. PERMISSIVE WITHDRAWAL

### A. *Standard of Review*

█ If withdrawal of the reference is not mandatory, 28 U.S.C. § 157(d) also grants a court discretion to "withdraw, in whole or in part, any case or proceeding ... for cause shown." § 157(d). In determining whether "cause" exists, the court weighs the following factors: Are the proceedings core or non-core? Do the proceedings involve a jury demand? Would withdrawal further uniformity in bankruptcy administration? Would withdrawal reduce forum-shopping and confusion? Would withdrawal foster economical use of resources? Would withdrawal expedite the bankruptcy process? *Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 203 (S.D.Tex.2008) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)).

### B. *Nature of the Proceedings*

█ The bankruptcy court makes the initial determination of the core status of the proceedings[5], however, the district court conducts a *de novo* review of the bankruptcy court's findings.[6] *Mirant*

---

**4.** As noted earlier, a district court in the Southern District of Texas has reached this conclusion in a similar case. *See Cano v. GMAC Mortgage Corp.*, No. 09–129 (S.D. Tex. Sept 29, 2009).

**5.** The bankruptcy court held that these proceedings were core under 28 U.S.C. § 157(b)(2). *Rodriguez v. Countrywide Home Loans (In re Rodriguez)*, 396 B.R. 436, 447 (Bankr.S.D.Tex.2008).

**6.** If a matter is non-core, the bankruptcy court may issue final orders and judgments only with the consent of the parties. *In re OCA, Inc.*, 2006 WL 4029578, at *3 (E.D.La. Sept.19, 2006) (citing *Michaelesco v. Shefts*, 303 B.R. 249, 252 (D.Conn.2004)); *see Vela v. Enron Oil & Gas Co.*, 2007 WL 1564562, at

*Corp. v. The Southern Co.*, 337 B.R. 107, 115 n. 13 (N.D.Tex.2006) (citing 28 U.S.C. § 157(b)(3)). The term "proceedings" refers to "specific claims, causes of actions, or grounds for relief, and not to the entire action." *Id.* at 116 (citing *Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 425 (D.Mass. 1995)). This Court must therefore make an independent determination as to the core status of each cause of action asserted in the complaint. *Id.*

■■■ The Bankruptcy Code does not define the terms "core" and "non-core", however, the core status of a proceeding depends on "both the form and substance of the proceeding." *Id.* at 117 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)). A core proceeding either invokes "a substantive right provided by title 11 or ... [is a claim] that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d at 97; *see In re Luongo*, 259 F.3d 323, 332 n. 7 (5th Cir.2001) (finding the main objectives of the Bankruptcy Code to include "ensuring the efficient administration and equitable distribution of the estate for the benefit of the creditors and protecting the debtor's right to a fresh start"); *cf. In re Wood*, 825 F.2d at 97–98 (finding a claim based on liability under state law that could be brought outside the context of bankruptcy was non-core). Section 157(b)(2) provides a non-exclusive listing of core proceedings. *Id.* at 116. Core proceedings include:

(A) matters concerning the administration of the estate; ...

(I) determinations as to the dischargeability of particular debts; ...

(L) confirmation of plans; ...

(O) other proceedings affecting ... the adjustment of the debtor-creditor or the equity security holder relationship ...

28 U.S.C. § 157(b)(2).

■■■ Where core issues predominate and the objectives of the Bankruptcy Code will potentially be impaired, a district court should generally deny a motion to withdraw the reference and permit the bankruptcy court to retain jurisdiction. *See Mirant Corp.*, 337 B.R. at 119; *In re Efficient Solutions, Inc.*, 2000 WL 1876356, at *6 (E.D.La. Dec.20, 2000) (finding that when core and non-core issues are inextricably intertwined, the core proceedings may predominate); *see also In re Luongo*, 259 F.3d at 332. *But see In re The Babcock & Wilcox Co.*, 2000 WL 422372, at *4 (E.D.La. Apr.17, 2000) (holding that withdrawal of the reference may be appropriate to have issues addressed by a court with undisputed jurisdiction).

[11] The Plaintiff's First Amended Complaint asserts the following general claims against Countrywide.

### 1. *Collection of Pre–Petition Deficiencies (Counts I, II, III)*

Plaintiffs allege that Countrywide engaged in improper accounting methods and sought to collect pre-petition deficiency amounts in violation of the confirmed

---

*3, 2007 U.S. Dist. LEXIS 38997, at *9 (S.D.Tex. May 29, 2007). A bankruptcy court may make findings of fact and conclusions of law with respect to non-core proceedings. *In re OCA, Inc.*, 2006 WL 4029578, at *3 (citing *In re United States Lines, Inc.*, 197 F.3d 631, 636 (2d Cir.1999)). These determinations are subject to *de novo* review by the district court. *Id.* "In this sense, the bankruptcy court acts like a magistrate court with respect to proceedings that are related but non-core." *Id.* The classification of a proceeding as core or non-core therefore determines whether a bankruptcy court has adjudicatory jurisdiction or has a restricted judicial role over the claims. *Mirant Corp.*, 337 B.R. at 115–16 (citing 28 U.S.C. §§ 157(b)(1), (c)(1)).

plans [7], orders of the bankruptcy court, and the Bankruptcy Code. Plaintiffs assert that 11 U.S.C. § 105(a) of the Bankruptcy Code grants power to the bankruptcy court to remedy these violations through contempt sanctions, monetary relief, punitive damages, attorneys' fees and costs, and injunctive relief. As alleged, this claim addresses the administration of the bankruptcy estate and the substantive rights afforded to debtors by the Bankruptcy Code. These claims appear to be unrelated to the collection of *post*-petition fees at issue in *Wells Fargo* and *GMAC* discussed *infra.* As these "pre-petition deficiency" claims appear to be based on substantive rights afforded by the Bankruptcy Code and/or are claims that could arise only in the context of a bankruptcy case, these claims would appear to be core.

2. *Collection of Post–Petition Undisclosed, Unapproved Fees (Counts IV, V, VI, VII, VIII, IX, X, XI, XII, XIII)*

Plaintiffs also claim that Countrywide is collecting debts in violation of the Bankruptcy Code. Specifically, Plaintiffs assert Countrywide failed to disclose and obtain approval of certain fees or expenses incurred post-petition, but prior to discharge. Plaintiffs contend, through a variety of claims, that the collection of these fees post-discharge was *per se* unreasonable and in violation the confirmed Chapter 13 plans (and any contract formed by the confirmation of said plans), the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure. Essentially, Plaintiffs seek relief through the procedural protections set out in *Wells Fargo* and similar cases. Plaintiffs assert the bankruptcy court can provide relief for these violations through, *inter alia,* 11 U.S.C.

§ 105 by awarding the Plaintiffs contempt sanctions, monetary relief, punitive damages, attorneys' fees and costs, injunctive and declaratory relief.

The Plaintiffs assert, and the Report concurs, that the essence of the Plaintiffs' claims is whether the Bankruptcy Code, the Bankruptcy Rules, and the confirmation orders provide procedural restrictions that prohibit Countrywide's collection of undisclosed, unapproved fees after the debtor's discharge from bankruptcy. Adopting these restrictions would make these claims based on substantive rights provided by the Bankruptcy Code, which would appear to make all of these claims core. It therefore would appear that finding *Wells Fargo* to be applicable would result in these claims being considered core. Since these claims predominate the action, the action would be considered predominately core which would weigh against withdrawal of the reference.

Countrywide asserts that *GMAC* provides the proper interpretation of the procedural protections, or lack thereof, provided by the Bankruptcy Code. If the Court were to adopt the *GMAC* interpretation, Plaintiffs' claims related to the post-petition, undisclosed, unapproved fees would rely, in substance, on the mortgage contracts, state law, and RESPA. Were the Court to follow *GMAC,* the substance of the Plaintiffs' claims would appear to be non-core. As these fee and expense claims form the primary basis of the Plaintiffs' actions, these non-core claims would then predominate, justifying withdrawal of the reference.

3. *Attorneys' Fees*

Plaintiffs lastly seek attorneys' fees pursuant to Texas Civil Practice and Reme-

---

**7.** Plaintiffs assert that the confirmed plans amounted to a contract between Countrywide and themselves. Based on Countrywide's alleged violations of those plans by improperly collecting pre-petition deficiencies, Plaintiffs have brought a breach of contract claim against the Plaintiffs.

352

dies Code § 38.001. Countrywide asserts this is clearly a non-core, state law claim. The Plaintiffs contend, and the Report agrees, that the attorneys' fees provision of the Texas Civil Practice and Remedies Code merely provides a remedy in connection with a cause of action, not a separate cause of action. The Court agrees that § 38.001 does not create its own cause of action. Plaintiffs assert they are simply seeking attorneys' fees for their claims that Countrywide violated the Bankruptcy Code, the Bankruptcy Rules, other associated orders, and/or their contract with the debtors. Countrywide has not provided authority indicating that seeking a state-law remedy as a part of a core claim can convert that proceeding into a non-core claim. Should the Court find the substance of the Plaintiffs' claims to be core, the remedy or relief sought would not appear to convert the substantive nature of those claims into non-core claims. The core claims would still center around the Bankruptcy Code and substantive rights granted thereunder.

### 4. Conclusion

Since the Court adopts the procedural restrictions adopted in *Wells Fargo,* all of the Plaintiffs claims, with the exception of the state attorneys' fees remedy, are considered core. The core nature of the proceedings predominates, weighing against withdrawal of the reference.

### C. Jury Demand

"If the right to a jury trial applies in a proceeding that may be heard ... by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). As a result, when one party requests a jury trial, but does not consent to conducting the trial in the bankruptcy court, this may

justify withdrawal of the reference. *See In re Nu Van Tech., Inc.,* 2003 WL 23785355, at *2 (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 47–48, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)); *see In re Clay,* 35 F.3d 190, 195, 197–98 (5th Cir.1994). Here, neither party has made a jury demand. Therefore, withdrawal of the reference on these grounds is not applicable and does not weigh toward withdrawal of the reference.

### D. Judicial Economy

Where the bankruptcy court is intimately familiar with the types of claims filed as well as the specifics of the claim, the potential expediency of the bankruptcy court resolution of the issues favors denial of motion to withdraw the reference. *In re The Babcock & Wilcox Co.,* 2001 WL 725318, at *7 (E.D.La. June 26, 2001); *In re Efficient Solutions, Inc.,* 2000 WL 1876356, at *6 (E.D.La. Dec.20, 2000) (denying withdrawal, in part, because withdrawal would serve only to prolong the litigation and expend valuable party and judicial resources). *But see Liljeberg Enters., Inc.,* 2000 WL 63307, at *4 (holding withdrawal supported where district court was familiar with the claims and the relationship of the parties); *Mirant Corp.,* 337 B.R. at 123 (holding that when a claim will neither interfere with nor advance the bankruptcy process, expediting the bankruptcy process is not relevant to the withdrawal decision).

This adversary proceeding has been pending in the bankruptcy court since February 26, 2008. Over the past year, the bankruptcy court has held many hearings, issued opinions concerning and bifurcating a motion to dismiss, and set a class certification hearing for December 2009. The bankruptcy court is very familiar with this case, the parties, and the claims. Further, that court is intimately familiar

with the applicable Code provisions. The Report expressly declined to consider its familiarity with the case in its recommendation against withdrawal of the reference, noting that Countrywide filed its motion for withdrawal of the reference only two months after the case was filed. The bankruptcy court felt it improper to consider its familiarity with the issues presented when it only became so familiar due to the ten-month delay in ruling. This Court finds that course to be both prudent and judicious, however, this lack of conclusion does not necessarily weigh in favor of withdrawal.

The Court must also look to whether the motion for withdrawal is an attempt at forum-shopping. *In re Liljeberg Enters., Inc.*, 2000 WL 63307, at *4; *see Dimitri v. Granville Semmes*, 2000 WL 1843495, at *4 (E.D.La. Dec.14, 2000). When a movant has been consistent in its position that particular proceedings belong in the district court, however, there is no support for forum shopping. *Travelers Indem. Co. v. The Babcock & Wilcox Co.*, 2002 WL 100625, at *4 (E.D.La. Jan.23, 2002). Countrywide has consistently asserted that these proceedings should be withdrawn to this Court, which discourages a finding of forum-shopping. Countrywide, however, also asserts that the split between the *GMAC* and *Wells Fargo* line of cases requires superior court guidance. The United States Bankruptcy Court for the Southern District of Texas has uniformly adopted the procedural restrictions noted in *Wells Fargo*, as has the McAllen District Court in *Cano v. GMAC Mortgage Corp.*, No. 09–129 (S.D. Tex. Sept 29, 2009). *See In re Rangel*, 408 B.R. 650, 2009 WL 1531961 (Bankr.S.D.Tex. May 29, 2009); *In re Wilborn*, 404 B.R. 841 (Bankr. S.D.Tex.2009); *Wells Fargo*, 379 B.R. 643 (Bankr.S.D.Tex.2007). Countrywide's motion for withdrawal of the reference could be viewed as an attempt to "appeal" these

decisions without taking the formal step of seeking interlocutory review (or final appellate review) of these holdings. Viewed in that regard, Countrywide's actions seeking superior court guidance could be viewed by some as a form of forum-shopping.

Countrywide lastly asserts there are several appellate and class action issues related to judicial economy that justify withdrawal of the reference.

### 1. *Review of Class Action Certification*

Countrywide contends that unless the reference is withdrawn, it will lose court of appeals review over the "death knell" issue of class certification. Federal Rule of Civil Procedure 23(f) authorizes circuit courts of appeal to consider interlocutory appeals of class certification decisions. Fed.R.Civ.P. 23(f). Rule 23(f), however, applies only to district court certification orders and not to bankruptcy court orders. *See Weber v. United States*, 484 F.3d 154, 160–62 (2d Cir.2007); *Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241, 1246 (11th Cir.2002). A party may still appeal a bankruptcy court's certification decision to the district court. *See* 28 U.S.C. § 158(a); *Weber*, 484 F.3d at 161–62; *Powe*, 312 F.3d at 1246; Fed. R. Bankr.P. 7023 (providing that Rule 23 "applies in adversary proceedings"). The *Powe* court noted that nothing in Rule 23(f) suggested "that an appeal to the court of appeals should trump district court appellate jurisdiction over bankruptcy cases." *Powe*, 312 F.3d at 1246; *see Weber*, 484 F.3d at 161–62. "In sum, the appellate avenue addressed by Rule 23(f) is already available to petitioners through an interlocutory appeal to the district court." *Powe*, 312 F.3d at 1246.

Further, a decision of a bankruptcy court may be directly appealed to the court of appeals in certain specified circumstances and when the court of appeals

authorizes such an appeal. *See* 28 U.S.C. § 158(d)(2)(A). A court of appeals may also hear appeals of interlocutory orders issued by the district court sitting as appellate court in bankruptcy matters. *In re El Paso Elec. Co.*, 77 F.3d 793, 794 (5th Cir.1995) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

### 2. *Costs of Intermediary Appeal*

Countrywide also contends that withdrawal of the reference would eliminate the unnecessary and costly intermediary appeal to the district court under 28 U.S.C. § 158(a). Countrywide identifies one district court that has withdrawn a reference, in part, to eliminate a costly intermediary appeal. *See Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101, 113 (E.D.N.Y.2002) (citing *In re Burger Boys*, 94 F.3d at 762; *In re Orion Pictures Corp.*, 4 F.3d at 1101). This case is distinguishable, however, because the claims withdrawn in the *Abondolo* case were non-core, and thus the district court would have had to try those issues *de novo*. Further, the *Abondolo* court only withdrew certain claims/motions, and not the entire case.

### 3. *Conclusion as to Appellate Issues*

The Report concluded that the appellate concerns identified by Countrywide, though general and applicable to all bankruptcy proceedings, slightly favored withdrawal of the reference. Apart from the precedential nature of a Fifth Circuit ruling on the issue of certification (and other issues) and the costs of adding an appellate step, Countrywide does not identify why this particular case, as opposed to any class action in general that is proceeding in a bankruptcy court, would not receive a satisfactory opportunity to appeal to this Court.

### 4. *Jurisdiction Over Multi-Debtor Class Actions*

■ Countrywide asserts bankruptcy courts do not have jurisdiction to preside over multi-debtor class actions. Federal Rule of Civil Procedure 23 authorizes and sets forth the procedures for maintaining class actions. *See* Fed.R.Civ.P. 23. By incorporating Rule 23 into the Bankruptcy Code, Congress "indisputably intended to make procedures related to prosecuting a class action" available in bankruptcy proceedings. *Certified Class in Charter Securities Litigation v. Charter Co. (In re Charter Co.)*, 876 F.2d 866, 870 (11th Cir. 1989); *see* Fed. R. Bankr.P. 7023 (incorporating Rule 23 into the Rules of Bankruptcy Procedure). Courts thus have upheld the jurisdiction of bankruptcy courts over class actions when the criteria expressed in Rule 23 are satisfied. *See In re Charter Co.*, 876 F.2d at 871; *Reid v. White Motor Corp.*, 886 F.2d 1462, 1469–70 (6th Cir. 1989); *Matter of Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir.1988); *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 404 B.R. 841, 848–49 (Bankr.S.D.Tex. 2009); *In re Iommazzo*, 149 B.R. 767, 775 (Bankr.D.N.J.1993); *see also Davis v. Davis (In re Davis)*, 194 F.3d 570, 572 (5th Cir.1999) (citing cases standing for the proposition that class actions are available in adversary proceedings before bankruptcy court).

Several courts have also certified multi-debtor classes. *See In re Wilborn*, 404 B.R. at 869; *In re Montano*, 2007 WL 2688606, at *2 (Bankr.D.N.M.2007) (citing *Guetling v. Household Fin. Servs., Inc. (In re Guetling)*, 312 B.R. 699, 704 (M.D.Fla. 2004); *Porter v. Nations Credit Consumer Discount Co. (In re Porter)*, 295 B.R. 529, 539 (Bankr.E.D.Pa.2003); *In re Barrett*, 292 B.R. at 8; *In re Singleton*, 284 B.R. at 325; *Beck v. Gold Key Lease, Inc. (In re Beck)*, 283 B.R. 163, 173 (Bankr.E.D.Pa.

2002); *Williams v. Sears, Roebuck & Co. (In re Williams),* 244 B.R. 858, 867 (S.D.Ga.2000); *Nelson v. Providian Nat'l Bank (In re Nelson),* 234 B.R. 528, 534 (Bankr.M.D.Fla.1999)). While the permissible scope of a multi-debtor class action in bankruptcy court may be a valid question [8], it appears that a multi-debtor class action may proceed in bankruptcy court.

Countrywide further challenges the bankruptcy court's ability to preside over a putative nationwide class action.[9] Thus far, the bankruptcy court has only permitted discovery and briefing with respect to the certification of a district-wide class action. A hearing as to the certification of the district-wide classes will be held by the bankruptcy court in December. It would appear premature at this time to consider the certification of a nationwide class action as part of this motion to withdraw the reference. Should the bankruptcy court retain jurisdiction over this case, Countrywide could be given leave to address this issue as part of a subsequent motion to withdraw the reference should the bankruptcy court later certify nationwide classes.

### 5. *Experience with Class Actions*

Countrywide contends that district courts routinely handle class actions and are more experienced with class actions than bankruptcy courts. This Court would note that no court routinely handles class actions. Nevertheless, this factor would appear to favor withdrawal of the reference.

### E. *Conclusion*

The Report concluded that, on the balance, the factors weighed against withdrawal of the reference. It noted that, generally, there may be greater costs in adversary proceedings being tried by bankruptcy courts given the multiple layers of appeal. It held that these costs alone do not justify withdrawal of the reference. The Report also indicated that the class action issues raised did not justify withdrawal of the reference. Overall, the core nature of the proceedings and the familiarity of the bankruptcy court with the types of claims brought weighed in favor of denial of Countrywide's motion.

Countrywide has valid concerns about the costs associated with an intermediary appeal to this Court as well as the precedential value associated with a Fifth Circuit ruling. Countrywide may also have valid concerns about the certification of a nationwide class action, however, this concern would appear to be premature. Countrywide's other concerns about this case proceeding as a class action do not appear to support withdrawal of the reference.

Permissive withdrawal therefore would appear to turn on whether this Court finds *GMAC*'s lack of restrictions are a better interpretation of the Bankruptcy Code and Rules than *Wells Fargo* procedural restrictions, and, if so, whether adopting *GMAC* on a motion to withdraw the reference (as opposed to an appeal) would be appropriate. This Court stands by the *Wells Far-*

---

**8.** The Court notes there is a division between bankruptcy courts as to whether they have the authority to exercise jurisdiction over a nationwide class action of debtors. *Compare Noletto v. Nationsbanc Mortgage Corp. (In re Noletto),* 244 B.R. 845, 849 (Bankr.S.D.Ala. 2000) (finding bankruptcy courts have jurisdiction), *with Motichko v. Premium Asset Recovery Corp. (In re Motichko),* 395 B.R. 25, 31

(Bankr.N.D.Ohio 2008) (citing *Wells Fargo Bank v. Singleton, N.A. (In re Singleton),* 284 B.R. 322, 325 (D.R.I.2002); *Nelson v. Providian Nat'l Bank (In re Nelson),* 234 B.R. 528, 534 (Bankr.M.D.Fla.1999)) (holding actions are limited to debtors who obtained their discharge in the same judicial district).

**9.** *See supra* note 6.

*go* analysis. The claims are considered by the Court to be core, and the bankruptcy court's familiarity with these types of claims weighs against withdrawal.

## V. CONCLUSION

Withdrawal of the reference is not mandated in this case. In deciding this case, the bankruptcy court will only be required to apply RESPA to understand how payments were allocated. Application of RESPA, a well-established area of law, is by no means "substantial and material" consideration of non-bankruptcy federal law, the requirement for mandatory withdrawal of the reference.

Furthermore, permissive withdrawal is not appropriate in this case. The key question in this regard is whether the Court adopts the *GMAC* interpretation or the *Wells Fargo* interpretation of this fact pattern, the former leading to the conclusion that some of the claims at issue are non-core and withdrawal may, therefore, be appropriate. Since the Court adopts the *Wells Fargo* analysis, however, and holds that the claims at issue are core, permissive withdrawal of the reference is not appropriate. The objections to the Report and Recommendation are hereby DENIED. The Report and Recommendation of the Bankruptcy Court is hereby ADOPTED.